Opinion
 

 ZEBROWSKI, J.
 

 This case concerns whether a homeowners association may record, in a county’s land title records, a document asserting that a homeowner is in violation of the association’s covenants, conditions and restrictions (hereafter CC&R’s). We conclude that there is no authority for recordation of such a document, and that the document recorded in this case should have been expunged.
 

 I. The Facts
 

 Petitioners own a house in the Beverly wood area of Los Angeles. The property is subject to a declaration of restrictions which was recorded in 1940 and which affects 1,324 homes. These restrictions were updated in 1994 by the recordation of an amended and restated declaration of CC&R’s. The CC&R’s are administered by the Beverly wood Homes Association (hereafter BHA). For purposes of this petition, it is assumed that petitioners are bound by these CC&R’s.
 
 [1]
 

 The CC&R’s provide for “Architectural and Design Control” by BHA. These controls require approval of construction or alterations by BHA. The
 
 *63
 
 CC&R’s indirectly provide that BHA may record a notice of noncompliance by providing that property improvements will eventually be deemed in compliance “unless actual notice executed by the Association of such . . . noncompliance shall appear of record in the office of the County Recorder of Los Angeles County . . . Petitioners obtained approval from BHA for a remodeling project on their property. The project approval included approval for the painting of the new construction in “blue/blue-grey tones.” The evidence is in conflict, however, as to whether the shades later applied precisely matched the colors approved.
 

 Either when painting was underway or shortly after it was completed in June 1995, petitioners received a letter from the BHA president complaining about the “atrocious bright-blue color” being applied, which the president found “hideous” and “offensive.”
 
 [2]
 
 The letter contended that “as to the color, you never obtained approval of this color and, as such, you have now violated the CC&Rs.” The letter purported to levy a fine of $50 and advised that the fine would be rescinded only if petitioners painted their property in a “color consistent with that in the surrounding neighborhood.” The letter continued that if petitioners did not comply, not only would additional fines accrue, but in addition “a notice of non-compliance will be filed against the property. A notice of non-compliance is notice to the world that there is a violation of CC&Rs. Such notice simply has the effect of preventing a sale, transfer or mortgage of the affected property.” The letter from the BHA president concluded “[l]et me assure you, I have received numerous phone calls from your neighbors, as well as those passing by your house while walking their dog or children. Because I live on the street behind you, most of the people in our local neighborhood know where I live and, unfortunately, also know my phone number.”
 

 Petitioners refused to repaint their house in accordance with the demands of BHA. Several months later, in October 1995, while trying to refinance, petitioners learned from their title insurance company that BHA had unilaterally and without further notice recorded a “Notice of Non-Compliance with Declaration of Restrictions (Non-Conforming Improvement)” (hereafter the notice of noncompliance) against their property. As a consequence, the pending refinance could not close. Petitioners attempted to negotiate a release of the notice of noncompliance, but BHA refused to release the notice until petitioners repainted their home. Petitioners would not agree to repaint. In order to complete the refinance with the notice of noncompliance still of record, petitioners had to post a cash bond of $10,000 in favor of their title insurer.
 

 
 *64
 
 Negotiations apparently continued without progress until BHA filed suit in March 1996. BHA sought abatement of the offending color as a nuisance, punitive damages, attorney fees and costs. Petitioners moved for expungement of the notice of noncompliance. The motion was denied. This petition for writ of mandate followed.
 

 II. The Statutory Law
 

 A.
 
 There is no specific authorization for recordation of a notice of noncompliance.
 

 Miller and Starr contains a nonexclusive list of 99 types of instruments that may be recorded. The recordation of most of these instruments is specifically authorized by statute. (3 Miller & Starr, Cal. Real Estate (2d ed. 1989) Recording and Priorities, §§ 8:4-8:5,.pp. 275-292.) A notice of noncompliance with CC&R’s is not on the list, nor has any other specific authorization been cited. If a notice of noncompliance is recordable, recordation must be authorized by inclusion within a generic category of recordable documents.
 

 B.
 
 BHA relies on generic authority that does not authorize recordation of a notice of noncompliance.
 

 BHA relies on the generic authorization for recordation of documents contained in Government Code section 27280, subdivision (a), which provides that “[a]ny instrument or judgment affecting the title to or possession of real property may be recorded . . . .” The notice of noncompliance in this case was not a “judgment,” hence if recordable, it must be recordable as an “instrument.”
 

 The term “instrument” as used in Government Code section. 27280 is defined in Government Code section 27279, subdividion (a), as “a written paper signed by a person or persons transferring the title to, or giving a lien on real property, or giving a right to a debt or duty.” Three categories are thus presented. A recordable “instrument” is one which either a) transfers title, b) “gives” a lien, or c) “gives” a right or duty.
 

 Clearly the notice of noncompliance has no effect on the state of the title. Title remains vested in petitioners as before, possibly subject to typical deeds of trust or similar financing liens, etc. The first category of the “instrument” definition does not apply.
 

 Nor does the notice of noncompliance “give,” or create, a lien on real property. While it does cloud the title by giving public notice of a claim and
 
 *65
 
 creating uncertainty about the ability of BHA to force an eventual repainting of the house, the notice of noncompliance does not create a “lien.” Nor has BHA argued that its notice of noncompliance creates a “lien.” Hence the second category of the “instrument” definition does not apply.
 

 BHA relies on the third category of the “instrument" definition. BHA argues that the notice of noncompliance is a recordable instrument “because it is in writing and gives ‘a right to a debt or duty’ in that it provides petitioners and any successors notice of their duty to bring their property into compliance.” Clearly there is a major difference between providing notice of a duty, and “giving" or creating that duty. To the extent that BHA has the “right” to dictate the color of a wall or garage door, that “right” was given to BHA by the CC&R’s. If the right exists, it exists whether or not a notice of noncompliance is recorded to give public notice of BHA’s claim. In this case, for example, BHA filed suit to enforce this claimed right, something BHA could have done without recording a notice of noncompliance. Thus BHA’s notice of noncompliance does not come within the third category of the “instrument” definition.
 

 Even assuming that the notice of noncompliance were an “instrument” as defined by Government Code section 27279, it would be recordable only if—pursuant to Government Code section 27280—it affected “title to” or “possession of’ the real property. As discussed above, the notice of noncompliance does not affect title to the property. Nor does it affect possession. Petitioners retain possession as well as title. Legally speaking, petitioners can freely transfer title and possession. The constraints petitioners are experiencing on transfer of title and possession are practical ones, not legal limitations. For example, property subject to a lis pendens remains freely transferable as a legal matter. (See, e.g.,
 
 Stagen
 
 v.
 
 Stewart-West Coast Title Co.
 
 (1983) 149 Cal.App.3d 114, 122 [196 Cal.Rptr. 732].) The notice of noncompliance involved here has no
 
 legal
 
 effect on title or possession, or on transfers of title or possession. Instead, the notice simply creates uncertainty about whether BHA will be able to force petitioners (or their successors) to repaint their home. It is because few purchasers or lenders would likely be willing to assume this risk that transfer or encumbrance of the property might be impeded.
 

 No authority for recordation of the notice of noncompliance has been cited except for the statutes discussed above. Since the cited statutes do not authorize the recording and no other statutory authority can be found, it must be concluded that there is no statutory authorization for recording such a document.
 

 
 *66
 
 C.
 
 The notice of noncompliance is not recordable in the absence of statutory authority.
 

 The system for public recording of land title records was established by statute. (See Gov. Code, § 27201 et seq.) The proper operation of that system is hence one of legislative intent.
 

 A county recorder is obligated to accept for recordation only those documents which are “authorized or required by law to be recorded.” (Gov. Code, § 27201.) There is no authority for the proposition that a county recorder either must or may record documents which are
 
 not
 
 “authorized or required by law to be recorded,” i.e., there is no authority for the proposition that the recorder must or may accept
 
 unauthorized
 
 documents for recordation. Nor is there any authority for the proposition that parties may by private contract create a right to record, for their own private purposes, documents which are not “authorized or required by law to be recorded.”
 

 In order to rule in favor of BHA that BHA’s notice of noncompliance is a recordable document, we would have to accept the proposition that
 
 any
 
 type of document is recordable unless recordation of that type of document is specifically prohibited. If that were the legislative intent, it is expectable that there would then be code sections prohibiting the recordation of specific types of documents.
 
 [3]
 
 However, BHA has cited no such code sections. Moreover, if it were the Legislature’s intent, in enacting the land title recording system, that any type of document could be recorded in that system, there would be no need for the Legislature to identify specific types of documents that are recordable. (Cf. 3 Miller & Starr, Cal. Real Estate,
 
 supra,
 
 Recording and Priorities, §§ 8:4-8:5, pp. 275-292 [listing specific types of recordable documents].) Yet the Legislature has taken great effort to identify various types of recordable documents. When the Legislature does specify a recordable type of document, the Legislature generally also specifies the standards according to which the propriety of such a recordation would be judged, and has often provided specific procedures governing disputes over propriety of a recording. (See, e.g., Code Civ. Proc., § 405 et seq.; Civ. Code, § 3109 et seq.) Thus there is no principled basis on which we can accept the proposition that the Legislature intended all documents of every kind to be recordable unless specifically prohibited. We therefore
 
 *67
 
 conclude that BHA’s notice of noncompliance was not a recordable document.
 
 [4]
 

 D.
 
 The notice of noncompliance should have been expunged.
 

 Petitioners’ motion to expunge the notice of noncompliance was brought pursuant to Civil Code section 3412, which provides that a written instrument may be adjudged void or voidable if it may cause serious injury if left outstanding. Here the notice of noncompliance was not a legally recordable document. The undisputed evidence demonstrated that the improper recordation of this document had created a cloud on title, preventing refinancing of petitioners’ property until they posted a $10,000 bond. The bond remains outstanding. We consider this a sufficiently serious injury to require expungement of the improperly recorded notice.
 
 [5]
 

 III. Disposition
 

 Accordingly, the superior court is directed to set aside its order denying petitioners’ motion to expunge the notice of noncompliance and to issue a
 
 *68
 
 new and different order granting the motion. The temporary stay is vacated. Real party to pay the costs of this petition.
 

 Boren, P. J., and Nott, J., concurred.
 

 The petition of real party in interest for review by the Supreme Court was denied August 20, 1997. Mosk, J., and Kennard, J., were of the opinion that the petition should be granted.
 

 [1]
 

 The issue here is not whether CC&R’s can be enforced. It is whether a notice of violation of CC&R’s is a type of document which can be recorded in the public land title records. We therefore need not consider the effect or application of Civil Code section 1354 (CC&R’s enforceable as equitable servitudes) or the case of
 
 Nahrstedt
 
 v.
 
 Lakeside Village Condominium Assn.
 
 (1994) 8 Cal.4th 361 [33 Cal.Rptr.2d 63, 878 P.2d 1275] (equitable servitudes to be enforced unless in violation of public policy). Rather than whether CC&R’s can be enforced, the question is whether compliance with CC&R’s can be coerced by recording a notice of noncompliance without statutory authority.
 

 [2]
 

 Shade of color is not the issue here. The issue is the recordability of the notice of noncompliance.
 

 [3]
 

 For example, Code of Civil Procedure section 405.36 prohibits the re-recording of a lis pendens after the lis pendens has once been expunged, unless leave of court is first obtained. This code section is only necessary because another section specifically authorizes the recording of a lis pendens in the first instance. (Code Civ. Proc., § 405.20.)
 

 [4]
 

 The argument has been suggested that homeowners associations such as BHA need the ability to record notices of noncompliance in order to effectively enforce CC&R’s. We need not debate the issue here, for that is a matter for legislative attention. The Legislature can consider whether recording should be allowed, and what type of procedures for review of recordings should be provided. Recordation could be authorized with a ready made system for due process review, for example, by simply amending the definition of “real property claim” in Code of Civil Procedure section 405.4 (the lis pendens law) to include a claim of violation of CC&R’s. However, only the Legislature can make such public policy decisions.
 

 [5]
 

 Attached to BHA’s complaint against petitioners was a copy of the CC&R’s. Article 3 of those CC&R’s deals with “Common Area,” and references a “Schedule B” on which parcels of land “owned by the Association for the benefit of the Members” were supposed to be listed. However, no Schedule B was attached to the copy of the CC&R’s appended to the complaint. It is therefore unclear whether BHA is, or is not, a common interest development subject to the regulation of the Real Estate Commissioner set forth in title 10, California Code of Regulations, section 2792.26. A homeowners association subject to this regulation “cannot be empowered to cause a[n] . . . abridgment of an owner’s right to the full use and enjoyment of his individually-owned subdivision interest on account of the failure by the owner to comply with provisions of the governing instruments . . . except by judgment of a court or a decision arising out of an arbitration . . . .” Placing a cloud on title with the specific intent of preventing transfer or refinancing can reasonably be construed as an “abridgment of an owner’s right to the full use and enjoyment of his individually-owned subdivision interest.” It thus appears that, to the extent BHA may be subject to this regulation because of status as a common interest development, it may be prohibited from recording notices such as the one involved in this case. To. the extent the regulation is not applicable because BHA may not be a common interest development, the decision we make here is consistent with the approach taken by the Real Estate Commissioner.