[No. B151224. Second Dist., Div. Two. Dec. 26, 2002.]

ELYSIAN INVESTMENT GROUP, LLC, Plaintiff and Appellant, v. STEWART TITLE GUARANTY COMPANY, Defendant and Respondent.

**COUNSEL**

McMillan & Herrell, Shelly D. McMillan, Matthew B. Herrell and Roslynn E. Anderson for Plaintiff and Appellant.

Cunningham & Treadwell, Francis J. Cunningham III and Christopher L. Moriarty for Defendant and Respondent.

**OPINION**

**NOTT, J.**—This case presents the question: Does the recording of a "notice of buildings, structures, or premises classified as either hazardous, substandard or a nuisance" comprise either a "defect in or lien or encumbrance on the title" or an "unmarketability of the title" within the meaning of those terms of coverage in a title insurance policy? The trial court concluded that it did not. We affirm.

In April 1998, Elysian Investment Group, LLC (Elysian), purchased a residence in Los Angeles from Countrywide Home Loans, Inc. (Countrywide). The garage had been converted to a second dwelling unit. The property was acquired by Countrywide through foreclosure and was sold "as is." At the time of the sale, Countrywide was aware that the second unit had been converted without permits and would have to be reconverted to a garage.

In connection with Elysian's purchase of the property, Stewart Title Guaranty Company (Stewart) issued a standard California Land Title Association (CLTA) policy of title insurance, insuring against loss or damage sustained by Elysian by reason of title being vested other than in Elysian,

any defect in or lien or encumbrance on title, unmarketability of title, and lack of a right of access to and from the land.[1]

Three months after the purchase, Elysian first discovered that a notice of premises classified as substandard (the Notice) had been recorded in the Los Angeles County Recorder's Office against the property. The Notice was recorded in December 1996.

The Notice states: "[T]he Department of Building and Safety has determined the . . . premises . . . located at the site described below, to be a SUBSTANDARD, as defined in Section 91.8902 (LAMC). The owner of the property has been duly notified pursuant to the above code section. [¶] If the owner or any other party having or acquiring any right, title or interest in the property fails or refuses to comply with the Notice as ordered, the Department may initiate procedures that can result in the work being done under City contract. The costs, plus administrative fees, would be assessed as a lien against the property." An unrecorded "substandard order" indicates that an addition was constructed without a building permit, that the garage was illegally converted to a dwelling unit, that the conversion resulted in a failure to maintain covered parking as required, and that the conversion contained hazardous wiring and plumbing. The order requires the owner to discontinue the unapproved use of the garage as a dwelling unit and to remove all unapproved wiring and plumbing.

The title insurance policy did not list the Notice as an exception to coverage. Elysian made a written claim to Stewart for coverage. In September 1998, Stewart denied Elysian's claim.

Elysian filed an action for breach of contract and tortious breach of the implied covenant of good faith and fair dealing against Stewart and Countrywide. Elysian alleged that Stewart breached the title insurance policy by failing to inform Elysian of the Notice. Stewart answered, denying the allegations of the complaint. It filed a cross-complaint for declaratory relief against Elysian.

Stewart filed a motion for summary judgment with respect to the complaint and cross-complaint. It asserted that as a matter of law there is no

---

[1]Two types of title insurance policies are available to owners of real property interests in California, CLTA and American Land Title Association (ALTA). CLTA insures primarily against defects in title which are discoverable through an examination of the public record, and ALTA additionally insures against off-record defects, including rights of parties in possession and not shown on the public records, water rights, and discrepancies or conflicts in boundary lines and shortages in areas that are not reflected in the public record. (See *Lick Mill Creek Apartments v. Chicago Title Ins. Co.* (1991) 231 Cal.App.3d 1654, 1659 [283 Cal.Rptr. 231] (*Lick Mill*).)

coverage because the Notice does not affect title to the property and that Stewart properly denied coverage. Elysian opposed the motion. The trial court granted the motion for summary judgment and entered judgment in favor of Stewart. This appeal followed.

## DISCUSSION

### I. *Standard of review*

We review a ruling on a motion for summary judgment de novo. (*Travelers Casualty & Surety Co. v. Superior Court* (1998) 63 Cal.App.4th 1440, 1450 [75 Cal.Rptr.2d 54].) "A defendant . . . has met his or her burden of showing that a cause of action has no merit if that party has shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to that cause of action. Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto." (Code Civ. Proc., § 437c, subd. (*o*)(2).) A "cross-complainant has met his or her burden of showing that there is no defense to a cause of action if that party has proved each element of the cause of action entitling the party to judgment on that cause of action. Once the . . . cross-complainant has met that burden, the burden shifts to the . . . cross-defendant to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto." (Code Civ. Proc., § 437c, subd. (*o*)(1).)

"Where a reviewing court is required to interpret an insurance policy without extrinsic evidence, the question is one of law." (*Lick Mill, supra*, 231 Cal.App.3d at p. 1659.) " 'While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply.' . . . Thus, 'the mutual intention of the parties at the time the contract is formed governs interpretation.' . . . If possible, we infer this intent solely from the written provisions of the insurance policy. . . . If the policy language 'is clear and explicit, it governs.' . . . [¶] When interpreting a policy provision, we must give its terms their ' "ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage." ' . . . We must also interpret these terms 'in context' . . . , and give effect 'to every part' of the policy with 'each clause helping to interpret the other.' . . . [¶] A policy provision is ambiguous *only* if it is susceptible to two or more reasonable constructions despite the plain meaning of its terms within the context of the policy as a whole. The court may then 'invoke the principle that ambiguities are gener- ally construed against the party who caused the uncertainty to exist (i.e., the

insurer) in order to protect the insured's reasonable expectation of coverage.'" (*Palmer v. Truck Ins. Exchange* (1999) 21 Cal.4th 1109, 1115 [90 Cal.Rptr.2d 647, 988 P.2d 568], citations omitted.) Elysian does not contend that the policy language is ambiguous.

## II. *Nature of the policy*

■ "Title insurance is a contract to indemnify against loss through defects in the title or against liens or encumbrances that may affect the title at the time when the policy is issued." (*King v. Stanley* (1948) 32 Cal.2d 584, 590 [197 P.2d 321]; *Rosen v. Nations Title Ins. Co.* (1997) 56 Cal.App.4th 1489, 1499 [66 Cal.Rptr.2d 714], quoting *King v. Stanley, supra,* 32 Cal.2d at p. 590.) There is no coverage for physical conditions of property that merely affect land value. (See *Hocking v. Title Ins. & Trust Co.* (1951) 37 Cal.2d 644, 647, 651-652 [234 P.2d 625, 40 A.L.R.2d 1238] [inability to obtain building permits until graded and paved streets were installed consistent with local ordinances did not affect title to property]; *Lick Mill, supra,* 231 Cal.App.3d at pp. 1660-1662 [the existence of hazardous waste on the property did not affect the marketability of the title and did not comprise an encumbrance on title].) Under Insurance Code section 12340.1, title insurance means "insuring, guaranteeing or indemnifying owners of real or personal property or the holders of liens or encumbrances thereon or others interested therein against loss or damage suffered by reason of: [¶] (a) Liens or encumbrances on, or defects in the title to said property; [¶] (b) Invalidity or unenforceability of any liens or encumbrances thereon; or [¶] (c) Incorrectness of searches relating to the title to real or personal property."

The insuring clauses of an insurance policy define and limit coverage. (*Lick Mill, supra,* 231 Cal.App.3d at p. 1659; *Glavinich v. Commonwealth Land Title Ins. Co.* (1984) 163 Cal.App.3d 263, 270 [209 Cal.Rptr. 266].) The policy issued to Elysian insures Elysian against loss or damage sustained or incurred by reason of "1. Title to the estate or interest . . . being vested other than as stated [in the policy]; [¶] 2. Any defect in or lien or encumbrance on the title; [¶] 3. Unmarketability of the title; [¶] 4. Lack of a right of access to and from the land."

Elysian asserts that the Notice constituted a defect in or lien or encumbrance on the title and caused the title to be unmarketable. We conclude that the Notice is not covered by either of those provisions.

## III. *Defect in or lien or encumbrance on the title*

■ The policy indemnifies against loss through defects, liens, or encumbrances affecting title. An encumbrance has been defined as "any right to, or

interest in, land which may subsist in another to the diminution of its value, but consistent with the passing of the fee." (*1119 Delaware v. Continental Land Title Co.* (1993) 16 Cal.App.4th 992, 999, fn. 4 [20 Cal.Rptr.2d 438] (*1119 Delaware*).) Encumbrances "include[] taxes, assessments, and all liens upon real property." (Civ. Code, § 1114.) A lien is "a charge imposed upon specific property by which it is made security for the performance of an act." (Code Civ. Proc., § 1180.)

The Notice did not affect Elysian's title to the property. It therefore is not a "defect in or lien or encumbrance on the title." The Notice, instead, warns that there are physical defects at the property. (See *Hocking v. Title Ins. & Trust Co., supra,* 37 Cal.2d at pp. 651-652; *Glavinich v. Commonwealth Land Title Ins. Co., supra,* 163 Cal.App.3d at p. 269 [a declaration of default as to a second trust deed which ultimately resulted in loss of the buyer's interest did not constitute a defect in, lien or encumbrance on title to a third trust deed].) It states that the property is substandard, as defined in the municipal code, that the owner must comply with the substandard order, and that the city may remedy the deficiencies if the owner does not do so. (See L.A. Mun. Code, former § 91.8903(a)(1).)[2] The Notice thus informed the owner of the existence of a duty, created by ordinance, to comply with local building and zoning requirements. It also raised the possibility of future enforcement, if the owner did not comply.

Enforcement, however, required further action on the part of the city. (See L.A. Mun. Code, former § 91.8903(c)(1).)[3] Had the department repaired the property and assessed the costs against the homeowner, the

---

[2] Both parties cite to the Los Angeles Municipal Code in their appellate briefs. We take judicial notice of the sections cited herein. (Evid. Code, § 459.) Los Angeles Municipal Code section 91.8903, in effect when the Notice was recorded, provided: "(a) Issuance of Initial Orders. [¶] 1. Notification. (Amended by Ord. No. 162,430, Eff. 7/15/87, Oper. 7/31/87.) Whenever the Department determines that any . . . premises is [substandard], the Department shall issue an order to the owner . . . . [¶] The order shall specify the conditions which exist which cause the . . . premises to be [substandard]; whereupon the owner . . . shall obtain the necessary permits and abate the deficiencies . . . ." The ordinance further provides that if the deficient conditions are not corrected, "the Department may order the owner to cause the building to be vacated and may also institute enforcement action . . . ." (*Id.,* former § 91.8903(a)(3).)

[3] Los Angeles Municipal Code former section 91.8903(c) provided: "Enforcement—Non-Compliance with Department Orders. [¶] 1. General. Whenever compliance with an order issued pursuant to the provisions of this division for vacated or occupied buildings has not been accomplished within the time set therefore or such additional time as may have been granted under the appellate provisions of this division, the Department may institute appropriate action to secure compliance as provided by law for misdemeanor violation or may cause, by whatever means the Department determines appropriate, the correction of the deficiencies, whether the building is vacated or occupied, or the vacation and demolition of the building or structure."

board of public works could ultimately have recorded the assessment as a lien. (See L.A. Mun. Code, § 91.8906(c)(7).)[4]

Title insurance does not insure against future events. (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 41 [77 Cal.Rptr.2d 709, 960 P.2d 513] ["Title insurance, as opposed to other types of insurance, does not insure against future events"]; *Rosen v. Nations Title Ins. Co., supra,* 56 Cal.App.4th at p. 1499.) It insures against defects in title existing at the time when the policy is issued. (*Rosen v. Nations Title Ins. Co., supra,* at pp. 1499, 1501 [bank's action filed after the title policy took effect occurred outside the scope of coverage]; *Lick Mill, supra,* 231 Cal.App.3d at p. 1663 [possibility of imposition of a lien for cleanup costs did not make hazardous waste an encumbrance on title].) It is not enough that subsequent events might result in enforcement ultimately affecting title. (See *Ward v. Superior Court* (1997) 55 Cal.App.4th 60, 65 [63 Cal.Rptr.2d 731] [a homeowners association's notice of noncompliance has no legal effect on title, but "simply creates uncertainty" about whether the homeowners association will be able to force petitioners or their successors to comply].)

*White v. Western Title Ins. Co.* (1985) 40 Cal.3d 870 [221 Cal.Rptr. 509, 710 P.2d 309] (*White*), *J. H. Trisdale, Inc. v. Shasta etc. Title Co.* (1956) 146 Cal.App.2d 831 [304 P.2d 832] (*J. H. Trisdale*), *1119 Delaware, supra,* 16 Cal.App.4th 992, and *Evans v. Faught* (1965) 231 Cal.App.2d 698, 706 [42 Cal.Rptr. 133] (*Evans*), relied upon by Elysian, are all distinguishable.

In *White,* our Supreme Court declined to apply section 12340.11 of the Insurance Code[5] retroactively to a preliminary title report. (*White, supra,* 40 Cal.3d at p. 884.) It considered the title company as an abstractor of title and held that it should have reported a recorded easement for a water line and well sites despite the policy's express exclusion from coverage of water

---

[4]Los Angeles Municipal Code section 91.8906(c)(7) provides: "Upon the confirmation of the assessment [by the City Council], the City Clerk shall transmit it and the report to the Board of Public Works. . . . The said Board shall . . . prepare and record with the County Recorder of Los Angeles County a certificate legally describing the real property which has been assessed, stating the date of confirmation of the assessment, and notifying that from and after said date the real property described is subject to a lien in the amount of the assessment for the cost of abating a nuisance upon the described real property."

[5]Section 12340.11 of the Insurance Code provides that preliminary title reports are not abstracts of title, and that a preliminary title report is not "a representation as to the condition of title to real property, but shall constitute a statement of the terms and conditions upon which the issuer is willing to issue its title policy."

rights. (*Id.* at pp. 877, 881-884.)[6] Unlike the present case, *White* concerned a recorded easement.

In *J. H. Trisdale,* a title insurer misidentified the holder of an easement in a preliminary title report and in a title insurance policy. The court considered the preliminary title report to be the equivalent of an abstract of title, and upheld liability for misidentification—the easement holder was misidentified as Pacific Telephone and Telegraph Company, whereas in fact the easement belonged to the Pacific Gas and Electric Company. (*J. H. Trisdale, supra,* 146 Cal.App.2d at pp. 835, 837-838.) The court also held that by misidentifying the holder of the easement, the insurer had breached the title insurance policy. (*Id.* at pp. 835-836.) As in *White,* the case concerns a recorded easement.

In *1119 Delaware,* an abstract of title failed to report a recorded conditional use permit (CUP), which restricted the use and alienation of an apartment building by requiring that a minimum of one occupant of each dwelling unit be at least 62 years old or physically handicapped. (*1119 Delaware, supra,* 16 Cal.App.4th at p. 996.) Unlike the Notice at issue in the present case, the CUP amounted to a governmentally imposed encumbrance on title because it limited the right of the owner to convey the property. In addition, the CUP applied only to that specific property, whereas the restrictions at issue here governed all similar property. (*Id.* at p. 1002.)

*Evans* concerned not title insurance but a covenant against encumbrances. The opinion notes that an encumbrance may include whatever impairs a property's use or impedes its transfer and that certain encumbrances consist of a physical burden on the land. (*Evans, supra,* 231 Cal.App.2d at pp. 706-707.) It also lists conditions that have been held to be encumbrances, and cites *Bertola v. Allred* (1920) 46 Cal.App. 593 [189 P. 489] for the proposition that a building restriction may be an encumbrance. *Bertola v. Allred* involved a building restriction imposed by a privately created covenant, not an ordinance, however. (*Id.* at pp. 594-595; and see 1 Miller & Starr, Cal. Real Estate (3d ed. 2000) § 2:23 [an encumbrance includes building restrictions imposed by privately created declarations or covenants, but not building restrictions created by ordinances unless the seller knows of the restriction and knows that it will defeat the buyer's objectives with respect to the property].) The present case concerns only building restrictions created by ordinance.

---

[6]An abstract of title requires the title company to list all documents recorded in the chain of title that impart constructive notice with respect to the chain of title. (See Ins. Code, § 12340.10.)

## IV. *Marketable title*

Elysian's contention that the Notice affected the marketability of its title also lacks merit. Citing *Mellinger v. Ticor Title Ins. Co. of California* (2001) 93 Cal.App.4th 691 [113 Cal.Rptr.2d 357] (*Mellinger*), Elysian contends that whether title is rendered unmarketable is a question of fact for the jury. We disagree. In *Mellinger*, a city street encroached on property purchased by the plaintiff, representing a possible third party interest in the land on a theory of implied dedication of private property. (*Id.* at p. 697.) The defendant issued an ALTA title insurance policy. The court held that the encroachment was neither so trivial nor so substantial as to present a question of law. (*Ibid.*)

The Notice recorded in the present case, by contrast, provides notice of the physical condition of the property, for which there is no coverage. (*Mellinger, supra,* 93 Cal.App.4th at p. 696.) It does not raise any doubts about title. " 'One can hold perfect title to land that is valueless; one can have marketable title to land while the land itself is unmarketable.' " (*Hocking v. Title Ins. & Trust Co., supra,* 37 Cal.2d at pp. 651-652.) Like the plaintiff in *Hocking v. Title Ins. & Trust Co.,* Elysian may have incurred unexpected expenses in order to use the property in the manner it envisioned at the time of purchase. The fact that Elysian was required to bring the property up to code does not cast doubt on who owns the property.

## V. *Exception to the exclusions*

■ Elysian cannot rely upon an exclusion to coverage to extend coverage. (*Ray v. Valley Forge Ins. Co.* (1999) 77 Cal.App.4th 1039, 1048 [92 Cal.Rptr.2d 473] ["Insurance policy exclusions do not create coverage"]; *Stanford Ranch, Inc. v. Maryland Cas. Co.* (1996) 89 F.3d 618, 626 ["It is well established in California that an exclusion cannot act as an additional grant or extension of coverage"].) Elysian points to a provision that excludes from coverage any "loss or damage, costs, attorneys' fees or expenses which arise by reason of: [¶] (a) Any law, ordinance or governmental regulation (including but not limited to building or zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; . . . or the effect of any violation of these laws, ordinances or governmental regulations, *except to the extent that a notice of the enforcement* thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy." (Italics added.)

Unlike an assessment lien, for example, the Notice of substandard dwelling did not affect title. It therefore did not give rise to coverage under the basic insuring provisions of the policy, and the exclusion does not expand that coverage to include the Notice.

Even if the exclusion could be understood as granting coverage based upon the reasonable expectation of the insured (see *White, supra,* 40 Cal.3d at p. 881), the Notice of substandard dwelling arguably does not fall within the exception to the exclusion. As discussed above, the Notice was not a notice of enforcement under municipal procedures. The Notice was instead a warning, preliminary to any formal enforcement action.

## VI. *Breach of the covenant of good faith and fair dealing*

Because we hold that Stewart did not breach the title insurance policy, the bad faith count necessarily fails as well. (See *Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 36 [44 Cal.Rptr.2d 370, 900 P.2d 619].)

## DISPOSITION

The judgment is affirmed. Stewart Title Guaranty Company shall recover its costs on appeal from Elysian Investment Group, LLC.

Boren, P. J., and Doi Todd, J., concurred.