[No. A105789. First Dist., Div. Two. Mar. 29, 2005.]

RADIAN GUARANTY, INC. et al., Plaintiffs and Appellants, v. JOHN GARAMENDI, as Insurance Commissioner etc., Defendant and Respondent.

**1284**

COUNSEL

Schnader Harrison Segal & Lewis, David Smith and Stephen H. Dye for Plaintiffs and Appellants.

Bill Lockyer, Attorney General, Randall P. Burcherding and Paul D. Gifford, Deputy Attorneys General, for Defendant and Respondent.

Miller, Starr & Regalia, Richard G. Carlston and Sunny J. Knight for American Land Title Association as Amicus Curiae on behalf of Defendant and Respondent.

Manatt, Phelps & Phillips, Terri D. Keville, Phyllis A. Marshall and Marc D. Luesebrink for Mortgage Insurance Companies of America as Amicus Curiae on behalf of Defendant and Respondent.

OPINION

RUVOLO, J.—

## I.

### INTRODUCTION

Appellant Radian Guaranty, Inc. (Radian)[1] is authorized to transact mortgage guaranty insurance and is statutorily prohibited from transacting any other class of insurance, including title insurance. (See Ins. Code, §§ 12640.10 & 12360.[2]) In this action, Radian appeals from a denial of its petition for a writ of administrative mandamus (Code Civ. Proc., § 1094.5) by which it sought to reverse a cease and desist order issued by respondent John Garamendi, Insurance Commissioner of the State of California (the Commissioner). The Commissioner's cease and desist order prohibits Radian from selling the Radian Lien Protection policy (RLP), which provides lenders with protection from a borrower's default for a range of losses, including coverage for a "Loss due to Undisclosed Liens." The Commissioner determined that coverage for losses due to undisclosed property liens constitutes title insurance pursuant to section 12340.1, and because Radian does not possess the

---

[1] Radian Guaranty, Inc. and Amerin Guaranty Corporation are subsidiaries of Radian Group, Inc., a New York Stock Exchange traded financial services company with assets of approximately $5 billion. RadianExpress.Com, Inc. does not issue insurance policies; it merely provides loan closing services to mortgage lenders. For purposes of convenience, all of these entities will all be referred to as "Radian."

[2] All undesignated statutory references are to the Insurance Code.

requisite certificate of authority to transact title insurance, it is not authorized to sell RLP in California or anywhere else in the United States.[3]

Radian urges that we reverse the superior court's ruling denying its petition for a writ of administrative mandamus on the grounds that the cease and desist order was based on a misinterpretation of the coverage provided by the RLP and the applicable statutes controlling mortgage guaranty insurers, such as Radian. We disagree, and find the cease and desist order was appropriately entered and should be permanently enforced.

## II.

### Statutory Overview and Procedural History

The Legislature has carved out three classes of insurance to cover land: title insurance, mortgage insurance, and mortgage guaranty insurance. Title insurance insures losses suffered "by reason of . . . (a) Liens or encumbrances on . . . property; (b) Invalidity or unenforceability of . . . liens or encumbrances . . . or (c) Incorrectness of searches relating to the title . . . ." (§§ 104 & 12340.1.) Mortgage insurance insures the payment of authorized real estate securities (§ 12500), and mortgage guaranty insurance insures against financial losses by reason of "nonpayment of principal, interest, and other sums agreed to be paid under the terms of any note . . . secured by a mortgage, deed of trust, or other instrument constituting a first lien . . . on real estate." (§ 12640.02, subd. (a).) Each class of insurance serves a different purpose, and together they protect California's real estate marketplace.

Most property/casualty insurance companies are multi-line. In other words, these companies do not limit their underwritings to one particular line of insurance but instead write several or multiple lines of insurance. For example, a multi-line property/casualty insurance company may write homeowners, automobile, fire, marine, liability, workers' compensation, and professional malpractice policies. On the other hand, recognizing the potential volatility of the California real estate marketplace, title insurers, mortgage insurers, and mortgage guaranty insurers are permitted to write only a single line of insurance. As such, the Legislature has expressly prohibited title insurers, mortgage insurers, and mortgage guaranty insurers from transacting any other class of insurance other than the one for which they have been authorized by their respective certificates of authority; hence, they are known

---

[3] The American Land Title Association and the Mortgage Insurance Companies of America have filed separate amicus curiae briefs in support of the Commissioner's cease and desist order. Radian has filed separate responses to each of these briefs.

as monoline insurers. (See §§ 12360 [title insurance]; 12441 [mortgage insurance]; 12640.10 [mortgage guaranty insurance].)[4]

■ Radian is a monoline insurer and holds a certificate of authority issued by the Commissioner to transact mortgage guaranty insurance in California.[5] Mortgage guaranty insurers are governed by a separate chapter of the California Insurance Code, titled the Mortgage Guaranty Insurance Act. (See § 12640.01 [stating that §§ 12640.01–12640.20 are to be known and cited as the Mortgage Guaranty Insurance Act].)

Radian began to market its new RLP in the fourth calendar quarter of 2001 as a faster, less expensive "alternative to title insurance." Radian self-describes the RLP as a "mortgage guaranty pool insurance product" sold "only to sophisticated lenders seeking to purchase strategically limited mortgage guaranty insurance coverage for pools of refinanced home mortgages, second mortgages and home equity loans, usually in anticipation of selling such pools of mortgages to Fannie Mae, Freddie Mac or in the secondary market for such loans." To clarify, the RLP is not a substitute for owners' title insurance, which owners are typically required to carry by lenders. In the event of a refinancing, home equity loan, or a second lien, an owner's title insurance would continue to protect the owner from any risks relating to holding of the title. Therefore, although the owner pays the premium for the RLP, the beneficiary of the policy is the lender.

In the event of a borrower default, the RLP provides coverage for losses segmented into the following two broad coverage types: a) undisclosed lien losses; and b) losses other than undisclosed lien losses. Each of these coverage types is subject to a separate aggregate loss limit. The aggregate loss limit establishes a cap or policy limit for all losses arising from that coverage type for all loans resulting in claims in the insured pool.[6]

---

[4] Section 12360 states: "An insurer which anywhere in the United States transacts any class of insurance other than title insurance is not eligible for the issuance of a certificate of authority to transact title insurance in this State nor for the renewal thereof."

Section 12441 states: "An insurer which anywhere in the United States transacts any class of insurance other than mortgage insurance is not eligible for the issuance of a certificate of authority to transact mortgage insurance in this State nor for the renewal thereof."

Section 12640.10 states in pertinent part: "An insurer which anywhere transacts any class of insurance other than mortgage guaranty insurance . . . is not eligible for the issuance of a certificate of authority to transact such classes of mortgage guaranty insurance in this state nor for the renewal thereof."

[5] To be an "admitted" insurer, i.e., one "entitled to transact insurance business in this State" (§ 24), an insurer must obtain a certificate of authority from the Commissioner. A certificate only issues when a number of prerequisites, including sufficient capitalization, are met. (§ 700 et seq.)

[6] The coverage breaks down as follows: The policy provides that the total loss payable for undisclosed liens is equal to one-half of 1 percent (or 50 basis points) of the aggregate of the

Radian claims it is "the lone innovator" of the type of coverage provided by the RLP, which tacitly acknowledges that the RLP is *not* a typical mortgage guaranty insurance policy. By way of comparison, the standard mortgage guaranty policy insures against loss suffered by a lender following the default of a borrower and foreclosure by the lender. While the RLP has one claims computation provision similar to that found in the standard mortgage guaranty insurance policy, the RLP also contains an additional claims computation provision, which we later describe, that is not in any standard mortgage guaranty insurance policy. This provision provides coverage for losses suffered due to undisclosed liens. Furthermore, the standard mortgage guaranty insurance policy requires a lender to tender good and marketable title as a condition precedent to a claim. This requirement was omitted from the RLP because the RLP is designed to insure the lender's lien position.

Shortly after the RLP was being marketed and sold in California, an investigation was initiated to analyze the essential elements of the policy. On June 19, 2002, the Commissioner ordered that Radian immediately cease and desist from marketing, soliciting, negotiating, and selling insurance policies that provide coverage to lenders for undisclosed property liens. The Commissioner concluded that the nature of the risk covered by the RLP included a title insurance risk, which Radian could not lawfully sell.

Radian appealed the Commissioner's cease and desist order to the Office of Administrative Hearings. Following extensive administrative proceedings, the administrative law judge affirmed the Commissioner's cease and desist order. Once this determination was made, Radian requested that the Commissioner review the administrative law judge's decision. On July 18, 2003, the Commissioner issued his final order to Radian to cease and desist selling the RLP.[7]

Radian then sought to challenge the cease and desist order by a petition for administrative mandamus. (Code Civ. Proc., § 1094.5.) After the San Francisco Superior Court denied its petition for a writ of administrative mandamus, this appeal followed.

---

mortgages in the pool. For any other loss, besides undisclosed liens, the aggregate limit is only .001 percent (or one basis point). Thus, the coverage provided for losses resulting from undisclosed liens is 50 times greater than the coverage allowed for losses resulting from anything else. Respondent claims this disparity confirms the "RLP's true purpose is not mortgage guaranty insurance, but providing lenders with protection against lien defects, the purpose of title insurance."

[7] The sale of Radian's RLP has also been blocked in Alabama, Pennsylvania, Texas, Florida, New Mexico, Connecticut, and North Carolina because of the coverage for undisclosed liens.

## III.

### DISCUSSION

### A. Standard of Review

Guided by the monoline restrictions and the applicable statutory definitions of mortgage guaranty and title insurance, the Commissioner issued the challenged cease and desist order after concluding that Radian's RLP improperly combined title insurance and mortgage guaranty insurance in one policy, in violation of the statutory monoline restrictions. (§ 12640.10.) On appeal, Radian contends that the Commissioner's cease and desist order is invalid. Radian claims that its "RLP is as a matter of law mortgage guaranty pool insurance and Radian is licensed to sell mortgage guaranty pool insurance in California." Consequently, the overriding issue in this appeal is whether the RLP, as examined in the administrative proceeding, constitutes mortgage guaranty insurance as defined by section 12640.02, subdivision (a), or title insurance as defined by section 12340.1.

■ Our review of Radian's appeal from a denial of its petition for a writ of administrative mandamus is de novo, because Radian's arguments involve only questions of undisputed fact and law. "The interpretation of a statute . . . is a question of law . . . ." (*California Teachers Assn. v. San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699 [170 Cal.Rptr. 817, 621 P.2d 856].) "A trial court's interpretation of a statute is reviewed de novo," and "the application of a statutory standard to undisputed facts is reviewed de novo." (*Harustak v. Wilkins* (2000) 84 Cal.App.4th 208, 212 [100 Cal.Rptr.2d 718].)

### B. Is RLP Mortgage Guaranty Insurance or Title Insurance?

We proceed to Radian's contention that "[f]rom a statutory analysis, there is nothing in the RLP that makes it anything more, less or other than mortgage guaranty insurance." Basically, Radian is challenging the Commissioner's conclusion that coverages for losses due to undisclosed property liens constitute title insurance.

In the words of the statute, "Title insurance means insuring, guaranteeing or indemnifying owners of real or personal property or the holders of liens or

encumbrances thereon or others interested therein against loss or damage suffered by reason of: (a) Liens or encumbrances on, or defects in the title to said property; (b) Invalidity or unenforceability of any liens or encumbrances thereon; or (c) Incorrectness of searches relating to the title to real or personal property." (§§ 104, 12340.1.)

■ Title insurance has unique attributes not shared by other types of insurance. "Most types of insurance provide protection against loss from potential damage from future events, and usually apply to conduct of the insured within his or her control. The title policy indemnifies for conditions that exist on the date of the policy, does not insure against loss from future events, and does not represent that the event insured against will not occur." (3 Miller & Starr, Cal. Real Estate (3d ed. 2000) § 7:2, p. 12; see also *Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 41 [77 Cal.Rptr.2d 709, 960 P.2d 513] (*Quelimane*); *Elysian Investment Group v. Stewart Title Guaranty Co.* (2002) 105 Cal.App.4th 315, 322 [129 Cal.Rptr.2d 372].)

■ "[T]he function of title insurance is to protect against the possibility that liens and other items not found in the search or disclosed in the preliminary report exist. The records pertaining to real property are complex and encumbrances may be missed by even the most thorough search. Title insurance is an acknowledgment that errors may have been made." (*Siegel v. Fidelity Nat. Title Ins. Co.* (1996) 46 Cal.App.4th 1181, 1191 [54 Cal.Rptr.2d 84].) Consequently, " '[t]itle insurance is a contract for indemnity under which the insurer is obligated to indemnify the insured against losses sustained in the event that a specific contingency, e.g., the discovery of a lien or encumbrance affecting title, occurs. [Citations.]'. . ." (*Cale v. Transamerica Title Insurance* (1990) 225 Cal.App.3d 422, 425–426 [275 Cal.Rptr. 107].) The indemnifiable loss to an owner issued title insurance is the lost equity in the property, while the indemnifiable loss to a lender is measured by the extent to which the insured debt is not repaid because the value of the property is diminished or impaired by outstanding lien encumbrances or title defects covered by the title insurance. Therefore, superior liens or title defects in claims may exist which reduce the market value of the security property (the value to the owner) yet result in no loss or damage to the insured lender because the effect of the title problems does not reduce the value of security property below the amount of an indebtedness secured. (*Ibid.*; accord, *Karl v. Commonwealth Land Title Ins. Co.* (1993) 20 Cal.App.4th 972, 978–979 [24 Cal.Rptr.2d 912].)

The RLP policy language providing coverage for undisclosed liens mirrors the foregoing statutory and case law definition of title insurance. The insuring clause in the RLP provides that it insures against "Loss sustained by reason of the Default . . . ." Two distinct types of losses are theoretically contemplated under the RLP. As already noted, "Loss," as defined by the RLP, includes a traditional mortgage guaranty component—reimbursement to the lender for financial loss due to default of the borrower on a mortgage lien secured by real estate. However, "Undisclosed Lien Loss" is also included within the definition of "Loss." The RLP defines loss arising from an "Undisclosed Lien" as meaning "any lien or similar encumbrance which (i) takes priority over the position of a Mortgage Agreement and (ii) was not disclosed on the Ownership and Legal Description Verification Report (with Tax Status Report), the Mortgage Lien Report, the Borrower's Application or the Borrower's Affidavit obtained by the Insured prior to the consummation of such Mortgage Agreement and (iii) was not otherwise known to the Insured prior to the Consummation of such Mortgage Agreement."

In the administrative proceedings below, the Department of Insurance (Department) presented documentary evidence and expert testimony to prove that the foregoing provisions defining the scope of coverage for an "Undisclosed Lien Loss" are similar to provisions found in typical title insurance policies. The Department also presented expert opinion that the RLP essentially functions as title insurance. Thus, if a lender makes a claim against the RLP for an undisclosed lien that takes priority over the lender's note, Radian will insure the lender's lien position by paying the loss incurred as a result of being in a different lien position from the one the lender thought it was in. Thus, according to title insurance experts, by establishing a separate claims computation for "Undisclosed Lien Loss," Radian has taken a standard mortgage guaranty pool policy, added an extensive layer of coverage for undisclosed liens, and created a policy that effectively insures a title risk.

The Commissioner also presented expert testimony to prove that conventional mortgage guaranty insurance has never provided coverage for undisclosed liens. Numerous experts provided similar testimony confirming that the loss covered by mortgage guaranty insurance is a credit risk that the borrower will default. In such case, the insurance covers the loss arising from the default. It does not cover loss from any other risk such as lien priority, other title insurance risks, or casualty risks. This testimony was supported by a review of the primary master policies from mortgage guaranty insurers operating in the United States. In those policies, the claims computation section lists: (1) unpaid principal; (2) lost interest; (3) advances necessary to

preserve the property during foreclosure; and (4) expenses associated with foreclosure as the elements of loss. There are no provisions for reimbursement to the lender for expenses associated with clearing title to the property. Rather, the policies all require that the lender tender good and merchantable title back to the mortgage guaranty insurer as a condition precedent to a claim.

■ Consequently, it was overwhelmingly demonstrated in the underlying proceedings that the risks insured by mortgage guaranty insurance and title insurance are absolutely distinct and do not overlap. The risk insured by mortgage guaranty insurance is the forward-looking risk of loss associated with default on the mortgage loan by the borrower. In contrast, the risk insured by title insurance includes the backward-looking risk that losses will result from "differences between the actual title and the record title as of the date title is insured." (*Quelimane, supra*, 19 Cal.4th at p. 41.) As we have seen, the risk insured under the undisclosed lien component of the RLP is the risk of loss arising from the existence of an undisclosed lien senior to the insured mortgage. The statutes and case law clearly and unambiguously confirm that indemnifying against risk of loss caused by the existence of an unknown prior lien on a property senior to the insured deed of trust constitutes title insurance.

On this issue, however, Radian gives short shrift to the policy language providing coverage for undisclosed liens, the statutory definition of title insurance, and other practical aspects of the mortgage guaranty business and title business as testified to by the expert witnesses. Instead, Radian asks that we myopically focus on the statutory definition of mortgage guaranty insurance and the insuring clause of the RLP. Radian points out that section 12640.02, subdivision (a)(1) defines "mortgage guaranty insurance" in relevant part as "[i]nsurance against financial loss *by reason of nonpayment of principal, interest, and other sums agreed to be paid* under the terms of any note or bond or other evidence of indebtedness secured by a mortgage, deed of trust, or other instrument constituting a first lien or charge on real estate . . . ." (Italics added.) Radian argues that the coverage provided by the RLP mirrors the statutory definition of mortgage guaranty insurance in that Radian "agrees to pay to the Insured [the lender] . . . Loss sustained *by reason of the Default in payments* by a Borrower on any Mortgage Agreement insured under this Policy."[8] (Italics added.)

---

[8] The first paragraph of the RLP, the insuring clause, states more completely: "RADIAN GUARANTY INC., a Pennsylvania corporation, . . . agrees to pay to the Insured identified below, in consideration of the premium paid or to be paid as specified herein, Loss sustained by reason of the Default in payments by a Borrower on any Mortgage Agreement insured under this Policy and listed in the attached Schedule . . . subject to the terms and conditions contained herein."

Radian argues, "[U]nder California law, mortgage guaranty insurance covers any shortfall in mortgage foreclosure proceeds to pay the full amount due under a mortgage loan, without regard to why the borrower defaulted or why the proceeds were insufficient to pay the loan. That is all RLP does." By this argument, Radian tries to differentiate its product from title insurance by pointing out that borrower default is a condition precedent to coverage under the RLP and, therefore, it is simply covering a loss that exists upon default, as would any mortgage guaranty product. Radian stresses that section 12640.02, subdivision (a), the statutory definition of mortgage guaranty insurance, does not delineate the factors that comprise the reason why the value of the assets recovered on foreclosure do not equal the amount of the lender's lien, and "[n]owhere in the statute does it require exclusion of that part of the insured's loss that is associated with an undisclosed lien, or even mention the cause of the default or loss." Consequently, Radian reasons that because undisclosed liens are not specifically mentioned in section 12640.02, subdivision (a), there is no reason to exclude losses caused by an undisclosed lien from the calculation of losses resulting from a mortgage default. Thus, Radian claims the coverage provided under RLP clearly falls within (and does not go beyond) the statutory definition of mortgage guaranty insurance.

In making this argument, Radian implies that the court should look no further than the first paragraph of the RLP, the insuring clause. However, the entire insurance policy must be construed together as a whole, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other. (*Producers Dairy Delivery Co. v. Sentry Ins. Co.* (1986) 41 Cal.3d 903, 916–917 [226 Cal.Rptr. 558, 718 P.2d 920].) Likewise, Radian selectively emphasizes the statutory definition of mortgage guaranty insurance in isolation without attempting to fit the language into a coherent reading of all of the statutes in the Insurance Code dealing with mortgage guaranty insurance providers. As a court, however, "we do not construe statutes in isolation, but rather read every statute 'with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness. [Citation.]' " (*People v. Pieters* (1991) 52 Cal.3d 894, 899 [276 Cal.Rptr. 918, 802 P.2d 420].)

When taken in isolation and read literally, the statutory definition of mortgage guaranty insurance set out in section 12640.02, subdivision (a), may be broad enough to encompass Radian's truncated version of the scope of the coverage provided by the RLP. However, the selective language Radian quotes from the RLP's insuring clause does not stand alone. By its terms, the RLP's insuring clause encompasses the definitions and coverage sections, and is "subject to the terms and conditions contained herein." The scope of

coverage of the RLP, when read in its full context, insures "Undisclosed Lien Loss." We once again direct Radian's attention to the wide array of cases confirming that insuring a lender against risk of loss associated with an undisclosed senior lien falls squarely within the statutory definition of title insurance. (*Cale v. Transamerica Title Insurance, supra,* 225 Cal.App.3d at pp. 425–426; *Lawrence v. Chicago Title Ins. Co.* (1987) 192 Cal.App.3d 70, 74 [237 Cal.Rptr. 264]; *Hawkins v. Oakland Title Ins. & Guar. Co.* (1958) 165 Cal.App.2d 116, 126 [331 P.2d 742].)

Moreover, we disagree with Radian's argument that because section 12640.02, subdivision (a), the statutory definition of mortgage guaranty insurance, is silent on the reason for the shortfall resulting in a lender's loss, whatever loss the lender suffers after the borrower defaults may be covered by mortgage guaranty insurance. Radian's argument, if followed to its logical conclusion, would allow it to sell not just title insurance, but also life insurance, disability insurance, casualty insurance, and other products it is not licensed to sell, simply because these lines of coverage need only be triggered upon a borrower's default. If Radian's analysis was correct, then the monoline statutes would be meaningless because Radian could provide virtually every line of insurance under the guise that it is simply covering a loss to the lender after the borrower defaults. Thus, the result in this matter implicates the monoline requirements of section 12640.10, which prohibits an insurer that transacts mortgage guaranty insurance from writing another line of insurance.

## C. Does the RLP Violate the Monoline Provision Found in Section 12640.10?

By way of legislative background, when the Mortgage Guaranty Insurance Act was codified in 1961 (Stats. 1961, ch. 719, § 1, p. 1955), it included section 12640.10, more commonly referred to as the monoline provision. The monoline provision was added to permit more focused regulatory supervision of the new line and also to protect other lines of insurance from the volatility presented by mortgage guaranty insurance in the event of an economic downturn, falling house prices, and widespread foreclosures.

There is abundant evidence in the record that the Legislature does not wish to weaken or remove the monoline provision. In 1982, Senate Bill No. 1656 was introduced in an attempt to amend the monoline restriction to permit mortgage guaranty insurers to offer other classes of insurance. As introduced, the original bill contained the following provision: " '12640.10. (a) . . . An

insurer may transact *any class or classes of insurance* and be eligible for the issuance of a certificate of authority and renewal thereof to transact the class of insurance defined in paragraph (2) of subdivision (a) of Section 12640.02 providing the segregated accounts required by subdivision (c) are established.' " (Sen. Bill No. 1656 (1981–1982 Reg. Sess.) as introduced Mar. 8, 1982, italics added.) This broad language, designed to remove the monoline restrictions with respect to mortgage guaranty insurers, was deleted from the bill when it was first amended on March 30, 1982.

The record shows that recently Radian sponsored Senate Bill No. 344 (Senate Bill 344), the central purpose of which was to remove the monoline restrictions applicable to mortgage guaranty insurers to allow them to issue products like the RLP that contain lien priority protection. Senate Bill 344 was defeated in committee. This is another confirmation that the Legislature does not wish to weaken or remove the monoline provisions.

On June 30, 1984, shortly after the first statutory effort to remove the monoline restriction for mortgage guaranty insurance failed, the Commissioner issued "Bulletin 84-3," which is still effective today. In Bulletin 84-3, the Commissioner applied the monoline provision found in section 12640.10, and concluded that a mortgage guaranty insurer violates California law if it attempts to add any other line of insurance to its mortgage guaranty product, as Radian is attempting to do in this case.

In Bulletin 84-3, the Commissioner addressed the attempt of several mortgage guaranty companies to cover losses caused by damage to property, whether caused by fire or some other hazard. To accomplish the same, the mortgage guaranty insurer would issue an endorsement that would delete the restoration of damage clause to make "the mortgage guaranty insurer liable to the lender if the insured house suffers a physical loss *which would have otherwise been covered by a physical damage or a special hazard policy*." (Italics added.) Rejecting this practice as a violation of the monoline statute applicable to mortgage guaranty insurers, Bulletin 84-3 states that by this practice "[t]he mortgage guaranty insurer then becomes the de facto insurer of physical damage on the residential property. The insurer is no longer insuring against a typical mortgage guaranty risk, i.e., the failure of the debtor to pay his debts because of economic changes, but rather is insuring against physical damage. As such, the insurer is in violation of the monoline restriction, Insurance Code section 12640.10(a)."

 While not controlling on this court, the Commissioner's long-standing consistent position does represent " 'a body of experience and informed judgment to which courts and litigants may properly resort for

guidance.'. . . ." (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 14 [78 Cal.Rptr.2d 1, 960 P.2d 1031], citing *Skidmore v. Swift & Co.* (1944) 323 U.S. 134, 140 [89 L.Ed. 124, 65 S.Ct. 161].) We find the reasoning employed in Bulletin 84-3 to be persuasive and directly applicable to this case.

In a parallel context, in Bulletin 84-3, the Commissioner rejected the attempt of mortgage guaranty insurers to transmute a property damage risk into a mortgage guaranty risk simply because the claim of loss is submitted after the borrower's default. Thus, to allow a mortgage guaranty insurer such as Radian to provide insurance for both a mortgage guaranty risk and a title risk in one policy would be directly contrary to both the wording and the intent of the monoline statutes as interpreted in Bulletin 84-3 by the Commissioner, who is entrusted with " 'protect[ing] the rights of all insurance policyholders.' [Citation.]" (*People v. United National Life Ins. Co.* (1967) 66 Cal.2d 577, 595 [58 Cal.Rptr. 599, 427 P.2d 199].) It would also run contrary to the monoline statute's legislative history, which demonstrates that had the Legislature intended to allow a title risk to be covered under mortgage guaranty insurance, it could have provided for that by amending the monoline statute.

Next, Radian makes the remarkable claim that section 12640.17, a provision in the mortgage guaranty statutes, shields it from the title insurance monoline restriction, presumably freeing Radian to include a title insurance risk in its mortgage guaranty insurance. Section 12640.17 provides: "All the applicable provisions of this code and of other statutes of this state, *except as the same may be in conflict herewith*, shall apply to the operation and conduct of the business authorized by this chapter." (Italics added.) Radian argues that section 12640.17 prohibits the application of any code provision, such as the title insurance monoline provision, that purports to preclude Radian from issuing a mortgage guaranty insurance policy that indemnifies lenders for any loss suffered where an undisclosed lien encumbers the loan security.

We read section 12640.17 as an inclusive provision. Rather than rewrite all the applicable laws into the Mortgage Guaranty Insurance Act, the Legislature wrote section 12640.17 to put mortgage guaranty insurers on notice that, in addition to the confines of the Mortgage Guaranty Insurance Act, they are also bound by all the applicable codes and statutes of this state in the operation and conduct of their business. If, however, a code or statute conflicts with the language authorized by the Mortgage Guaranty Insurance Act, then mortgage guaranty insurers can rely upon the dictates mandated by

the Mortgage Guaranty Insurance Act with full assurance that they are in compliance with California law. Simply put, all the laws of the State of California apply to the operation and conduct of the mortgage guaranty business, unless in conflict.

We perceive no conflict between the Mortgage Guaranty Insurance Act and the title insurance monoline restriction. In any event, what Radian fails to acknowledge in making this argument is that mortgage guaranty insurers are subject to their own specific monoline restriction. Just as section 12360 limits title insurers to offering title insurance, section 12640.10, subdivision (a) limits mortgage guaranty insurers to offering mortgage guaranty insurance. Consequently, the construction of section 12640.17 being advanced by Radian offers a strained, impractical interpretation of that statute, with an intent to create a conflict. It is unsupported by any legislative history or case law, and would lead to removing virtually all protection currently provided by the two segregated lines of insurance—an absurd result that is contrary to the evident purpose of the statutes under review.

### D. Does the Commissioner's Cease and Desist Order Violate Public Policy?

Lastly, Radian makes a broad public policy argument that "[i]f allowed, RLP would save California homeowners hundreds of millions of dollars a year in fees when they refinance their mortgages or take out second mortgages or home equity loans."[9] Consequently, Radian claims that this court's affirmance of the Commissioner's cease and desist order prohibiting sale of the RLP would be "anti-competitive; anti-innovative, and anti-consumer." Without denigrating the concerns expressed by Radian, we believe that they should ultimately be addressed to a forum other than a court of review. The policy arguments about whether the type of protection afforded by the RLP would ultimately benefit or harm consumers would be more properly directed at the Legislature. (*Fein v. Permanente Medical Group* (1985) 38 Cal.3d 137, 163 [211 Cal.Rptr. 368, 695 P.2d 665] [court may not "strike down a statute simply because we disagree with the wisdom of the law or because we believe that there is a fairer method for dealing with the problem"].)

---

[9] While the RLP has many similarities to traditional title insurance, it is far more limited and therefore less expensive than a standard lender's policy of title insurance. As Radian points out, the RLP protects against unknown liens only to the extent that the lien triggers a shortfall after default. There is no protection against other defects, such as easements and boundary disputes, which may otherwise impair the lender's security interest. Furthermore, in the event of a discovered lien, Radian's sole obligation is to pay, rather than clear the defect or to furnish counsel to defend title.

## IV.

### DISPOSITION

The judgment is affirmed.

Kline, P. J., and Haerle, J., concurred.

Appellants' petition for review by the Supreme Court was denied July 20, 2005. George, C. J., and Baxter, J., did not participate therein.