[No. B024445. Second Dist., Div. Five. Apr. 19, 1988.]

FRANCES AVCHEN, Plaintiff and Respondent, v.
KAYE R. KIDDOO, as Director, etc., Defendant and Appellant.

COUNSEL

John K. Van de Kamp, Attorney General, Edmond B. Mamer and Herbert A. Levin, Deputy Attorneys General, for Defendant and Appellant.

Allen J. Kwawer for Plaintiff and Respondent.

OPINION

**BOREN, J.**—The relationship contemplated by the Unemployment Insurance Code as the basis for requiring the payment of contributions (employment taxes) is that of employer and employee. We agree with the trial court that no such relationship exists between a nurses' registry and the nurses

who make use of the registry's services. Accordingly, we affirm the judgment in favor of respondent.

## FACTS

Respondent Frances Avchen was the sole proprietor and operator of Archer's Nurses' Registry from April 1, 1973, to December 31, 1975. The purpose of the registry was to sign up nurses who sought employment and unite them with hospitals that needed their services. The registry then collected a commission from successful placements.

Avchen's business entered formal agreements with the nurses listed on its registry, as required by the Division of Consumer Affairs. In the agreement, the nurse who wished to enroll with Archer's Nurses' Registry would appoint the registry "as my agent to assist me in securing employment for private duty nursing or for other types of nursing," and would agree to pay the registry a maximum of 10 percent of the gross earnings from the placement. This was not an exclusive agreement, and most of the nurses were concurrently signed up with eight or nine other nurses' registries. Moreover, most of the nurses were regularly employed by hospitals and were "moonlighting" by enrolling with the registry. The nurses informed the registry if there were restrictions on the hours or type of work they would accept. When the registry was notified of an opening, it would inform a suitable nurse of the name of the hospital and the shift; then the nurse would contact the hospital directly to confirm the availability of the position, the starting time, and whether or not she would take the job.

The nurses in the registry would be called for two different types of duty. For "private duty," a physician would request that a nurse from the registry be assigned to a particular patient for a particular amount of time. Alternatively, a hospital might request a nurse for "temporary staffing" and would thereafter make arrangements as to where the temporary nurse would work. In either instance, the hospital or the particular patient (not Avchen) would establish the rate of pay for the nurse's work. Nurses solicited for openings were free to reject any offer, and Avchen could not penalize them for this decision, except to stop calling nurses who continually refused to consider job openings. If a nurse worked on private duty, she would be paid directly by the recipient of her services and would retain responsibility for paying the registry the commission that was due. If the nurse worked on hospital staff duty, however, the hospital would forward the nurse's wages to the registry, which would pay her biweekly out of a trust account but withhold its commission, which was put into a general account.

Avchen, who is not a nurse and has had no medical training, testified that she did not control the work done by the nurses, nor did she believe she had

a right to do so. Avchen never checked on a nurse during a placement, nor was she allowed to fire a nurse for inadequate performance, although the nurses were on occasion fired by the hospitals where they were placed. Avchen was not called prior to the firings. Once or twice, Avchen terminated her relationship with nurses who had been fired by hospitals for using drugs. She had no way of knowing whether the nurses in her registry were incompetent: all she had to go on was a state license and a reference. Avchen did not supply the nurses with any equipment or uniforms, nor did she assist them in obtaining state nursing licenses. She did not consider the nurses to be her employees, and no nurse ever said she believed Avchen was her employer.

Avchen informed the auditor from the Employment Development Department of all the circumstances we have summarized above. Nonetheless, the department concluded that Avchen was the employer of the nurses in her registry and on March 23, 1976, assessed unemployment taxes and other charges upon her totaling $40,009.91.

On April 19, 1982, Avchen filed suit to recover the amounts she had paid, under protest, to the department, alleging that the assessment was improper because the nurses on her registry were independent contractors, not employees.[1] A nonjury trial was had, at the conclusion of which the trial court held that Avchen was not the employer of the nurses, whom it classified as independent contractors. The court awarded Avchen $40,009.91, plus interest of $29,526.38 and $103 in costs. The director appeals.

### DISCUSSION

■ The facts we have summarized above are undisputed. The Attorney General does not contend that the *mechanics* of the relationship between Avchen and the nurses are different from the way they were described at trial. Rather, the only dispute between the parties concerns the correct way in which to legally *define* that relationship. ■ When the essential facts in an unemployment taxation case are not in conflict, nor reasonably susceptible of conflicting inferences, the question of the legal relationship arising from those facts is one of law. (*Isenberg* v. *California Emp. Stab. Com.* (1947) 30 Cal.2d 34, 40-41 [180 P.2d 11]; *Tieberg* v. *Unemployment Ins. App. Bd.* (1970) 2 Cal.3d 943, 951 [88 Cal.Rptr. 175, 471 P.2d 975]; *Sudduth* v. *California Emp. Stab. Com.* (1955) 130 Cal.App.2d 304, 311 [278 P.2d 946].) ■ Simply put, we must determine, as a matter of law, whether the relationship between the nurses'

---

[1] At trial, the parties stipulated that Avchen exhausted all available administrative remedies prior to filing suit.

registry and the nurses is that of an employer and an employee, or whether it is something else.

Fortunately, the Legislature has greatly simplifed our task by enacting numerous statutes which explicitly define the nature of the relationship between nurses and nurses' registries.

In Business and Professions Code section 2732.05, the Legislature stated that "Every employer of a registered nurse, and every person acting as an agent for such a nurse in obtaining employment, shall ascertain that such nurse is currently authorized to practice as a registered professional nurse within the provisions of this chapter. *As used in this section, the term 'agent' includes, but is not limited to, a nurses registry.*" (Italics added.)[2] The section goes on to exclude from its operation those who engage the services of a nurse to care for a single patient (i.e., private duty nurses). This leaves doctors, clinics and certainly hospitals as "employers" of nurses while specifically excluding nurses' registries from such an appellation.

Though private duty nurses are excluded from the operation of section 2732.05, the Legislature has enacted a separate statutory scheme in which it reiterates the concept that nurses' registries are agents, not employers. Section 9958 et seq. regulates the relationship between private duty nurses and nurses' registries.[3] The Legislature defines a nurses' registry as a person who obtains and fills commitments for nursing service and makes referrals for other nursing employment. (§ 9958.2.) Nursing service is defined as "the assignment of a nurse, as a private duty, *self-employed,* licensed registered nurse, licensed vocational nurse, or practical nurse to render service to a patient under the direction or supervision of a physician or surgeon registered to practice in this state." (§ 9958, italics added.) A private duty nurse is further defined as "a *self-employed* nurse rendering service in the care of the patient . . . under the direction of a physician or surgeon, but who is paid by either the patient or the designated agent of the patient and who accepts the responsibilities of a *self-employed private contractor.*" (§ 9958.3, italics added.) In case there might be any remaining doubt as to the nature of the relationship between the nurses and the nurses' registry, the Legislature states that the registry shall be contractually designated as "the continuous agent of the nurse for purposes of assignment." (§ 9958.4, subd. (e)(1).)

---

[2] All future statutory references are to the Business and Professions Code except where otherwise indicated.

[3] Section 9958 et seq. was added by Statutes 1984, chapter 870, section 4, effective January 1, 1985. These statutes are virtually identical to their predecessor statutes, former section 9890 et seq., added by Statutes 1970, chapter 1399.

Based upon these statutes, we are satisfied that the Legislature does not intend for nurses' registries to be treated as employers of the nurses they enroll. The statutes' repeated use of the word "agent" to describe registries and the word "self-employed" to describe the nurses refutes the Attorney General's interpretation of the relationship between the registry and the nurses. The Legislature's definitions appear particularly sound and reasonable in light of the facts established in this case. These show that Avchen served as an agent for the nurses pursuant to contracts approved by the state's Division of Consumer Services. Avchen's role was simply to alert the nurses to an opening, after which the nurses themselves would negotiate the time, pay rate, assignments and other working conditions directly with their prospective employers. Avchen was not involved in the actual hiring or firing of the temporary nurses, did not supervise them in any manner, and assumed no responsibility for the quality of their work or their training. Finally, Avchen received no direct funds from those who hired private duty nurses, and instead had to rely on the nurses themselves to pay her the commission she was due. In the case of nurses hired for temporary staffing at hospitals, Avchen's only contact with the wages the nurses earned was as a trustee who placed the money in a trust fund (not in a general business account as would be used by a typical employer), because this was clearly money that did not actually belong to her.

It is apparent to us that Avchen's role was that of a commercial "matchmaker," much like a literary agent matching a writer and a publisher, or any other situation in which a commissioned go-between attempts to put buyers and sellers of goods and services in contact with each other. It is nonsensical to characterize what is patently an agency relationship as an "employment" relationship.[4]

## DISPOSITION

The judgment is affirmed.

Ashby, Acting P. J., and Hastings, J.,* concurred.

A petition for a rehearing was denied May 11, 1988, and appellant's petition for review by the Supreme Court was denied June 29, 1988.

---

[4] In passing, we observe that Unemployment Insurance Code section 606.5, which became effective after the trial in this case, confirms our view that the Legislature does not intend nurses' registries and similar agencies to be treated as the type of temporary services employer that the Attorney General has been struggling to classify it as, because the registries do not negotiate directly with the hospitals regarding pay, working conditions, or any other of the factors listed in section 606.5, subdivision (b)(1).

* Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.