[No. D048235. Fourth Dist., Div. One. Dec. 21, 2006.]

AN INDEPENDENT HOME SUPPORT SERVICE, INC., Petitioner, v. THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent; STATE COMPENSATION INSURANCE FUND, Real Party in Interest.

## COUNSEL

Law Offices of D. Anthony Gaston and D. Anthony Gaston for Petitioner.

No appearance for Respondent.

Robert W. Daneri, Judith D. Sapper, Jody A. Hale and Pedro G. Ruiz for Real Party in Interest.

## OPINION

**NARES, J.**—On this petition for peremptory writ of mandate (petition) we are presented with the question of whether compliance with the provisions of Civil Code[1] section 1812.5095, part of the Employment Agency, Employment Counseling, and Job Listing Services Act (Employment Agency Act) (§ 1812.500 et seq.) exempts petitioner An Independent Home Support Service, Inc. (AIHSS), a referral agency that provides domestic workers to individuals and entities, from state law requirements of maintaining workers' compensation insurance for the domestic workers. We conclude that by complying with the terms of section 1812.5095 such referral agencies are deemed not to be the employers, for the purposes of workers' compensation, of the domestic workers they refer. Accordingly, we issue a writ of mandate

---

[1] All further statutory references are to the Civil Code unless otherwise specified.

directing respondent Superior Court of San Diego County to vacate its order granting real party in interest State Compensation Insurance Fund's (State Fund) motion to strike references in AIHSS's complaint to Civil Code sections 1812.5095 and 1812.501, and Unemployment Insurance Code section 687.2.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

AIHSS is a domestic agency as defined in section 1812.501, subdivision (h). It provides a referral service to individuals and entities that require the services of a domestic worker, typically for an elderly or infirm family member. The company has a roster or pool of between 100 and 150 domestic workers. Patients who need home care assistance are often referred to AIHSS by hospitals at the time they discharge an individual, and, if the patient's care custodian is unable or unwilling to administer to his or her needs, the patient may call AIHSS. AIHSS will then refer a domestic worker for an interview with the patient.

The domestic worker is free to accept or decline the engagement and negotiate the hourly rate of pay. The domestic worker submits biweekly invoices to AIHSS, which are approved by the care recipient. AIHSS is responsible for collecting sums due the domestic worker. Receipts are deposited in a separate dedicated trust account, and the domestic worker is paid from this account.

In February 2004 the California Department of Industrial Relations, Division of Labor Standards Enforcement (the Department) conducted an investigation of AIHSS's offices. As a result of the investigation, the Department determined that AIHSS was employing three office workers for which it had not obtained workers' compensation insurance in violation of the law. Thereafter, after a hearing before the Labor Commissioner, that determination was upheld as to two employees. As to the third, that individual was determined to be not subject to workers' compensation insurance because that employee was a shareholder, officer and director of AIHSS.

AIHSS obtained workers' compensation insurance from State Fund on behalf of the two office workers. State Fund then performed an "underwriting inspection" of AIHSS's business. As a result of the inspection, State Fund advised AIHSS it had determined that the domestic workers referred to

---

[2] Because we are reviewing the court's grant of State Fund's motion to strike portions of AIHSS's complaint in this matter, we accept as true all material factual allegations contained therein. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

patients by AIHSS were employees of AIHSS for workers' compensation purposes. According to AIHSS, this determination would raise its monthly workers' compensation premiums from approximately $100 per month to as high as $16,000 per month.

AIHSS appealed that determination to State Fund's San Diego district office, asserting that the domestic workers were independent contractors, not employees, under section 1812.5095 and the test set forth in *S. G. Borello & Sons, Inc. v. Department of Industrial Relations* (1989) 48 Cal.3d 341 [256 Cal.Rptr. 543, 769 P.2d 399] (*Borello*). State Fund denied the appeal, finding that the domestic workers were considered employees of AIHSS for workers' compensation purposes. In doing so, State Fund did not discuss the applicability of section 1812.5095 or *Borello*.

AIHSS appealed State Fund's decision to the Insurance Commissioner. AIHSS was informed that as of June 2005 the Insurance Commissioner no longer heard appeals pertaining to a worker's status as employee or independent contractor.

AIHSS then filed a complaint against State Fund for declaratory relief, breach of contract and injunctive relief, alleging that its domestic workers were independent contractors under section 1812.5095 and *Borello*. In the complaint, it supported its allegations in part by referring to and relying on section 1812.501, subdivision (h), which defines "domestic agencies," and Unemployment Insurance Code section 687.2, which provides when a company such as AIHSS is considered an employer of domestic workers for unemployment insurance purposes.

In November 2005 State Fund filed a motion to strike all references in the complaint to Civil Code sections 1812.501, subdivision (h), 1812.5095, and Unemployment Insurance Code section 687.2. State Fund argued that these code sections were irrelevant as the Legislature did not intend that they apply to workers' compensation insurance, but only to unemployment insurance.

The court agreed with State Fund and granted the motion to strike, finding: "These provisions pertain to the interpretation and applicability of unemployment insurance, not workers compensation, which is at issue here. The Workers Compensation Act is liberally construed to extend benefits to persons injured in their employment. [Citation.] The tests to determine whether there is an employment relationship [have] been established through case law."

This petition followed.

## DISCUSSION

AIHSS asserts that its compliance with section 1812.5095 exempts it from state law requirements of maintaining workers' compensation insurance for the domestic workers it refers to patients, and therefore the court erred in granting State Fund's motion to strike. We conclude that compliance with the requirements of section 1812.5095 does exempt AIHSS from maintaining workers' compensation insurance for its domestic workers. Therefore we grant AIHSS's petition seeking to set aside the court's order granting State Fund's motion to strike.[3]

### I.   *Standard of Review*

Because we are called upon to construe a statutory scheme, we accord no deference to the trial court's determination. Instead, we apply de novo review to the issues posed by this action. (*Radian Guaranty, Inc. v. Garamendi* (2005) 127 Cal.App.4th 1280, 1288 [26 Cal.Rptr.3d 464].)

### II.   *Principles of Statutory Interpretation*

"In interpreting a statute where the language is clear, courts must follow its plain meaning. [Citation.] However, if the statutory language permits more than one reasonable interpretation, courts may consider various extrinsic aids, including the purpose of the statute, the evils to be remedied, the legislative history, public policy, and the statutory scheme encompassing the statute. [Citation.] In the end, we ' "must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." ' " (*Torres v. Parkhouse Tire Service, Inc.* (2001) 26 Cal.4th 995, 1003 [111 Cal.Rptr.2d 564, 30 P.3d 57]; see also *Harris v. Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1165–1166 [278 Cal.Rptr. 614, 805 P.2d 873].)

### III.   *Analysis*

### A.   *Section 1812.5095 Unambiguously Applies to Workers' Compensation*

AIHSS asserts that the court erred in striking from its complaint references to section 1812.5095 and other relevant statutes because its compliance with

---

[3] Based upon our holding we need not consider AIHSS's contention that even if compliance with section 1812.5095 by itself did not exempt it from the responsibility of maintaining workers' compensation, the court erred in granting State Fund's motion to strike because that fact would be relevant to determining if they met the common law test for determining if it were an employer under workers' compensation law.

the terms of section 1812.5095 meant it was deemed not to be the employer for workers' compensation purposes of domestic workers it refers to clients. We conclude that the plain language of section 1812.5095 demonstrates that it was intended to apply to workers' compensation insurance, not, as State Fund asserts and the court found, only unemployment insurance.

■ Section 1812.5095, subdivision (b) provides in part: "An employment agency *is not the employer* of a domestic worker for whom it procures, offers, refers, provides, or attempts to provide work, if all of the following factors characterize the nature of the relationship between the employment agency and the domestic worker for whom the agency procures, offers, refers, provides, or attempts to provide domestic work . . . ." (Italics added.) Section 1812.5095, subdivision (b) then sets forth nine different requirements that the employment agency must comply with in order for it not to be considered the employer of the domestic worker. (§ 1812.5095, subd. (b)(1)–(9).)

Of relevance to this appeal is subdivision (d) of section 1812.5095, which provides for the following written notice the employment agency must give to each domestic worker: "An employment agency referring a domestic worker to a job shall inform that domestic worker, in writing, on or before the signing of the contract pursuant to paragraph (1) of subdivision (b), that the domestic worker may be obligated to obtain business permits or licenses, where required by any state or local law, ordinance, or regulation, and *that he or she is not eligible for* unemployment insurance, state disability insurance, social security, or *workers' compensation benefits through an employment agency complying with subdivision (b)*. The employment agency referring a domestic worker shall also inform that domestic worker, if the domestic worker is self-employed, that he or she is required to pay self-employment tax, state tax, and federal income taxes." (Italics added.)

Further, subdivision (f) of section 1812.5095 provides: "An employment agency referring a domestic worker to a job shall orally communicate to the person seeking domestic services the disclosure set forth below prior to the referral of the domestic worker the following disclosure statement: [¶] '(Name of agency) *is not the employer of the domestic worker it referred to you. Depending on your arrangement with the domestic worker, you may have employer responsibilities.*' [¶] Within three business days after the employment agency refers a domestic worker to the person seeking domestic services, the following statement printed in not less than 10-point type shall be mailed to the person seeking domestic services: [¶] '(Name of agency) *is not the employer of the domestic worker it referred to you. The domestic*

*worker may be your employee or an independent contractor depending on the relationship you have with him or her.* If you direct and control the manner and means by which the domestic worker performs his or her work *you may have employer responsibilities, including* employment taxes and *workers' compensation,* under state and federal law. For additional information contact your local Employment Development Department and the Internal Revenue Service." (Italics added.)

██ Contrary to the contention of State Fund, and the findings of the court, nothing in the plain language of section 1812.5095 limits its application to unemployment insurance. Subdivision (b) of section 1812.5095 states that a referral agency that complies with its terms is not considered the employer. Further, there is no rational reason (and State Fund posits none) why the Legislature would require the agencies to notify domestic workers that they will not receive workers' compensation benefits from the agency if section 1812.5095 did not apply to workers' compensation insurance. If State Fund's interpretation were accepted, such notices would in effect be false and would confuse domestic workers as to who was responsible for providing workers' compensation insurance. Rather, that notice and the notice required to be given to the clients hiring domestic workers were intended to make clear who was responsible for that obligation. In clear language, the Legislature mandated that (1) domestic workers be informed that the referral agency was not responsible for providing workers' compensation insurance; and (2) domestic workers and the clients hiring them be informed that one or the other of them would be responsible for workers' compensation insurance, depending upon the nature of their relationship. The plain language of section 1812.5095 demonstrates it applies to workers' compensation insurance.

Moreover, the items that the employment agencies must comply with to be deemed not the employer of a domestic worker are the same type of factors that would compel a finding that a company or individual was not the employer of a worker for workers' compensation purposes under common law tests. In order to be considered not an "employer" for purposes of section 1812.5095, employment agencies must, among other things, (1) allow the domestic worker to sign with other employment agencies and work for persons not referred by the employment agency; (2) allow the domestic worker to select or reject any work referred by the employment agency; (3) allow the domestic worker to negotiate the amount of pay for the work referred; (4) not provide training to the domestic worker; (5) allow the domestic worker to perform his or her work "without any direction, control, or supervision exercised by the employment agency with respect to the manner and means of performing the domestic work"; (6) "not provide tools,

supplies, or equipment necessary to perform the domestic work"; (7) incur no obligation to pay the domestic worker if "the person for whom the services were performed fails or refuses to pay for the domestic work"; and (8) not have the power to terminate the domestic worker from his or her employment with the person to which the domestic worker was referred. (§ 1812.5095, subd. (b)(1)–(9).)

In *Borello, supra,* 48 Cal.3d 341, the California Supreme Court discussed the factors relevant to determining if an individual is an employee or independent contractor for workers' compensation insurance. Of primary importance was " 'whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired . . . .' [Citations.]" (*Id.* at p. 350.) The high court also indicated that the right to discharge at will without cause is strong evidence of an employee-employer relationship. (*Ibid.*) Other factors relevant to the determination, derived largely from the Restatement Second of Agency, include "(a) whether the one performing services is engaged in a distinct occupation or business; (b) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision; (c) the skill required in the particular occupation; (d) whether the principal or the worker supplies the instrumentalities, tools, and the place of work for the person doing the work; (e) the length of time for which the services are to be performed; (f) the method of payment, whether by the time or by the job; (g) whether or not the work is a part of the regular business of the principal; and (h) whether or not the parties believe they are creating the relationship of employer-employee." (*Borello, supra,* at p. 351.)

Finally, the Supreme Court noted that other jurisdictions apply a test involving six criteria. (*Borello, supra,* 48 Cal.3d at p. 354.) The court explained, "Besides the 'right to control the work,' the factors include (1) the alleged employee's opportunity for profit or loss depending on his managerial skill; (2) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; (3) whether the service rendered requires a special skill; (4) the degree of permanence of the working relationship; and (5) whether the service rendered is an integral part of the alleged employer's business." (*Id.* at pp. 354–355.)

Thus, the standards an employment agency must meet to not be considered an "employer" under section 1812.5095 would compel the conclusion under the common law test that it was not an employer of domestic workers for workers' compensation purposes. This is also compelling evidence the Legislature, in enacting section 1812.5095, intended that employment agencies that met the requirements of that section were not employers for workers' compensation purposes. The reason such agencies are required to give notice

to domestic workers they refer that they are not their employer and not responsible for unemployment insurance, state disability insurance, Social Security, *and* workers' compensation is that compliance with section 1812.5095's terms renders domestic referral agencies not the employer of domestic workers for *all* of these obligations.

State Fund raises numerous arguments why the plain language of section 1812.5095 does not mean what its states. State Fund argues AIHSS's interpretation of section 1812.5095 is incorrect because (1) the Workers' Compensation Act must be liberally construed in favor of awarding workers' compensation benefits; (2) workers' compensation is an exclusive and complete system and therefore there is no authority for applying section 1812.5095 to workers' compensation insurance; (3) section 1812.5095 does not provide an exclusive remedy; (4) a review of legislative history compels the conclusion that section 1812.5095 does not absolve employment agencies of liability for workers' compensation insurance; and (5) the relevant language in section 1812.2095 results from a "scrivener's error." We address these contentions in order.

## A. *Liberal Construction of the Workers' Compensation Act*

It is true that the Workers' Compensation Act (Act) "must be liberally construed to extend benefits to persons injured in their employment." (*Borello, supra,* 48 Cal.3d at p. 349.) "The Act intends comprehensive coverage of injuries in employment. It accomplishes this goal by defining 'employment' broadly in terms of 'service to an employer' and by including a general presumption that any person 'in service to another' is a covered 'employee.' " (*Id.* at p. 354.)

■ However, this does not mean that all relationships are covered. An employer is defined as "[e]very person including any public service corporation, which has any natural person *in service.*" (Lab. Code, § 3300, subd. (c), italics added.) An employee is defined as "every person *in the service of an employer* under any appointment or contract of hire or apprenticeship, express or implied, oral or written, whether lawfully or unlawfully employed." (Lab. Code, § 3351, italics added.)

However, an independent contractor, who is defined as a "person who renders service for a specified recompense for a specified result, under the control of his principal as to the result of his work only and not as to the means by which such result is accomplished" (Lab. Code, § 3353), is not

covered. (*Gonzalez v. Workers' Comp. Appeals Bd.* (1996) 46 Cal.App.4th 1584, 1589 [54 Cal.Rptr.2d 308].) " 'The law clearly provides that Labor Code section 3357's presumption of employee status is overcome if the essential contract of hire, express or implied, is not present under Labor Code section 3351.' " (*Barragan v. Workers' Comp. Appeals Bd.* (1987) 195 Cal.App.3d 637, 643 [240 Cal.Rptr. 811].)

Thus, to be covered an individual must be "in the service of an employer" and not an independent contractor. There is nothing in section 1812.5095 that contradicts the Act if it deems employment agencies that meet certain criteria not to be "employers" of domestic workers they refer and determines that the domestic workers may be "in the service of" the client, not the agency. This is the purpose of the required disclosure to the domestic worker that the agency is not responsible for workers' compensation insurance, and the disclosure to the client that it may be considered an employer responsible for workers' compensation insurance, unless the domestic worker is an independent contractor as to the client. Thus, section 1812.5095 is consistent with the Act.

### B. *The Act as an Exclusive and Complete System*

State Fund asserts that section 1812.5095 cannot carve out certain relationships from coverage under the Act because of the complete and exclusive coverage of the Act that covers "every person and does not allow for the exemptions claimed by [AIHSS]." Thus, State Fund argues an exemption or "exclusion" from the Act must be found in the Act itself, not statutes outside of its parameters. This contention is unavailing.

█ State Fund provides no authority for its position that any exclusions must be found in the Act itself. Indeed, one test in determining whether an individual comes under the Act's purview or is an independent contractor is "whether there are any *other* specific statutory exclusions." (*Johnson v. Workmans' Comp. Appeals Bd.* (1974) 41 Cal.App.3d 318, 322 [115 Cal.Rptr. 871], italics added.)

Further, contrary to State Fund's assertion, courts *are* "permitted to scour the various codes to determine if a person is an employee under workers' compensation law." Labor Code section 2750.5, which is not part of the Labor Code section governing workers' compensation, makes an unlicensed contractor who is performing work for which a license is required an employee of the hirer of the unlicensed contractor for purposes of workers'

compensation insurance. (*State Compensation Ins. Fund v. Workers' Comp. Appeals Bd.* (1985) 40 Cal.3d 5, 11 [219 Cal.Rptr. 13, 706 P.2d 1146].) As the California Supreme Court reasoned there: "We have concluded that [Labor Code] section 2750.5, including the penultimate paragraph, must be interpreted as applying to workers' compensation cases. Although [Labor Code] section 2700 states that the division is not applicable to workers' compensation but only to other matters, [Labor Code] section 2700 was adopted in 1937, and the subsequent enactment and amendment of [Labor Code] section 2750.5, including the last paragraph, show clearly that it was intended to have an effect in workers' compensation cases. The subsequently enacted special provision takes precedence over the general provision. [Citations.] The presence of a provision affecting workers' compensation in a division not intended to affect workers' compensation is clearly explained in the legislative history. While the bill when introduced may not have been intended to affect workers' compensation principles, it was thereafter amended so that the principles set forth in the bill would apply to workers' compensation cases." (*State Compensation Ins. Fund. v. Workers' Comp. Appeals Bd., supra,* 40 Cal.3d at pp. 11–12.) Thus, our Supreme Court has concluded that a division of the Labor Code outside that governing workers' compensation, which explicitly stated that it was *not* to apply to workers' compensation matters, nevertheless did.

Further, the Penal Code has sections that determine workers' compensation coverage for certain prisoners engaged in forced labor. Under Penal Code sections 4017 and 4125.1, county prisoners, when engaged in compulsory work, are only entitled to workers' compensation coverage if engaged in "prevention and suppression of forest, brush and grass fires." (Pen. Code § 4017; see *Parsons v. Workers' Comp. Appeals Bd.* (1981) 126 Cal.App.3d 629, 633–634 [179 Cal.Rptr. 88].)

Thus, we may properly look outside the division of the Labor Code governing workers' compensation to determine if an individual or entity is exempted or included within the requirement that employers carry workers' compensation insurance.

### C. *Lack of Exclusive Remedy under Section 1812.5095*

State Fund asserts that because the Employment Agency Act, of which section 1812.5095 is a part, does not provide an exclusive remedy, domestic workers may still claim to be employees for workers' compensation purposes. This contention is irrelevant to the issue before the court.

It is true, as State Fund points out, that the provisions of the Employment Agency Act "are not exclusive and do not relieve the parties subject to this title from the duty to comply with all other applicable laws." (§ 1812.523, subd. (e).) Section 1812.523, subdivision (f) provides that "[t]he remedies provided in this title are not exclusive and shall be in addition to any other remedies or procedures provided in any other law."

But State Fund's contention misses the point. Domestic workers that would potentially fall within the confines of section 1812.5095 are free to assert that they are employees of an employment agency for workers' compensation purposes because it has not complied with the requirements of that section and therefore is considered an employer. Further, they may claim to be employees, not independent contractors, of the person or entity hiring them for in-house care, depending upon the nature of the particular employment relationship. If they are considered to be employees of person or entity hiring them, they may pursue any remedy available under the Act. However, employment agencies that comply with the terms of section 1812.5095 are not employers of domestic workers and therefore the Act and its remedies have no application.

### D.   *Resort to Secondary Sources to Interpret Section 1812.5095*

State Funds contends that because the term "employer" in section 1812.5095 "lends itself to several interpretations," we must look to the legislative history of the Employment Agency Act, which shows that it was not intended to apply to workers' compensation insurance. We first conclude that because the term "employer" is not vague or ambiguous, it is not necessary to resort to the legislative history of the act to resolve this petition. Moreover, even if it were proper to consider the legislative history of section 1812.5095, it supports the conclusion that section 1812.5095 was intended to apply to workers' compensation purposes.

Section 1812.501, subdivision (f) provides the definition of an employer of a domestic worker as "any individual, company, partnership, association, corporation, agent, employee, or representative for whom or for which an employment agency or job listing service attempts to obtain an employee or to place a jobseeker." Thus, in the Employment Agency Act, the person who seeks and receives the services of a domestic worker is considered the domestic worker's employer, not the agency referring the worker. Further, as discussed above, if an employment agency complies with section 1812.5095's requirements, it is *not* considered an employer under the Employment Agency Act for specific responsibilities including workers' compensation insurance. State Fund does not point to anything in section 1812.5095, or the Employment Agency Act in general, that makes the term "employer" ambiguous.

Accordingly, we cannot consider the legislative history of section 1812.5095 because, "[i]n determining intent, we look first to the words of the statute, giving the language its usual, ordinary meaning. If there is no ambiguity in the language, we presume the Legislature meant what it said, and the plain meaning of the statute governs. [Citation.]" (*Hunt v. Superior Court* (1999) 21 Cal.4th 984, 1000 [90 Cal.Rptr.2d 236, 987 P.2d 705].) "Only when the language of a statute is susceptible to more than one reasonable construction is it appropriate to turn to extrinsic aids, including the legislative history of the measure, to ascertain its meaning." (*Diamond Multimedia Systems, Inc v. Superior Court* (1999) 19 Cal.4th 1036, 1055 [80 Cal.Rptr.2d 828, 968 P.2d 539].)

Moreover, even if section 1812.5095's reference to "employer" were vague and ambiguous, a resort to the legislative history of the Employment Agency Act does not support State Fund's position that it was intended to apply to only unemployment insurance.

In the 2005–2006 Regular Session of the Legislature, Assembly Bill No. 551 was introduced, seeking to amend certain portions of section 1812.5095. The proposed amendments, among other things, would have increased the disclosure requirements of referral agencies. An Assembly bill analysis of the proposed amendments reveals that the Legislature understood, as recently as June of 2005, that under section 1812.5095 employment agencies were not considered employers for workers' compensation purposes: "The stated purpose of this bill is to clarify the differences between domestic referral agencies and employers of domestic services. In this industry, there are two general types of businesses. First, *some businesses that provide domestic services are the actual employers of the domestic workers that are placed in an individual's home. As such, the company is responsible for, among other things, employment tax withholding and the provision of workers' compensation coverage. The second type of business generally procures employment for others by the placement of domestic help in private homes. These businesses are sometimes referred to as 'employment agencies' or 'referral agencies.' [¶] Existing law provides that the referral agency will not be deemed to be the employer of the domestic worker if certain factors characterize the nature of the relationship between the referral agency and the domestic worker. In such a situation, the domestic worker will either be an employee of the client or an independent contractor.* This determination depends on a multi-factored common law test for determining whether there is an employment relationship. The most important factor is whether the client directs and controls the manner and means by which the domestic

worker performs his or her work. *If the client is deemed to be the employer of the domestic worker, the client may have employer responsibilities, including employment taxes and workers' compensation.*" (Assem. Com. on Labor and Employment, Analysis of Assem. Bill No. 551 (2005–2006 Reg. Sess.) Apr. 20, 2005, pp. 2–3, italics added.)

Proponents of the bill, in arguing for the need for the increased disclosures to domestic workers the amendments would provide, also demonstrated an understanding that agencies that complied with section 1812.5095, and thus were not deemed "employers" of domestic workers, were not responsible for workers' compensation insurance, and the hiring party, depending on the relationship with the worker, might be: "The most important factor in determining whether a domestic worker is an 'employee' or an 'independent contractor' is whether the client directs and controls the manner and means by which the domestic worker performs his or her work. If the client is deemed to be the employer of the domestic worker, the client may have employer responsibilities, including employment taxes and *workers' compensation.* [¶] If a referral agency does not disclose the fact that it is not the employer, or that the consumer entering into the contractual relationship with the domestic worker may be the employer, *the consumer may mistakenly believe that the domestic worker is an employee of the referral agency, while the worker may assume that the agency or consumer is responsible for employment taxes and workers' compensation insurance.* Thus, the consumer may unwittingly face potential tax liability and penalties, and *the domestic worker may not be protected from* unemployment, *injury on the job,* or disability because employment taxes were not paid." (Sen. Com. on Labor and Industrial Relations, Analysis of Assem. Bill No. 551 (2005–2006 Reg. Sess.) June 22, 2005, p. 2, italics added.)

This legislative history demonstrates that the Legislature understood in discussing the proposed amendments to section 1812.5095 that (1) referral agencies that complied with its terms were not "employers" and thus not responsible for workers' compensation insurance; and (2) the client hiring domestic workers might have the responsibility for providing workers' compensation insurance, depending upon the client's relationship with the domestic worker.

Assembly Bill No. 551 (2005–2006 Reg. Sess.) passed both houses of the Legislature, but was later vetoed by the Governor.[4] In his veto message the Governor also demonstrated an understanding that section 1812.5095 applied

---

[4] Ordinarily, the legislative history of bills that fail to pass in the Legislature are entitled to little weight because of the conflicting intentions of the proponents of the legislation and those who voted against it. (*Grupe Development Co. v. Superior Court* (1993) 4 Cal.4th 911, 922–923 [16 Cal.Rptr.2d 226, 844 P.2d 545].) Here, however, Assembly Bill No. 551 (2005–2006 Reg.

to workers' compensation insurance: "This bill requires duplicative reporting for agencies which provide referral services for domestic employees. Current law already provides sufficient reporting requirements to ensure that *those who hire domestic workers are well aware of their obligations to pay taxes and procure workers' compensation insurance.*" (Governor's veto message to Assem. on Assem. Bill No. 551 (2005–2006 Reg. Sess.) Sept. 2, 2005, p. 1, italics added.)

Thus, not only the Legislature, but also the governor understood, long after section 1812.5095 was originally enacted, that it was intended to define employment relationships for workers' compensation purposes. As the most recent expression of the meaning of this statute, we give these statements considerable weight.

State Fund points to the legislative history of Assembly Bill No. 1370 (1993–1994 Reg. Sess.) which, among other things, enacted section 1812.5095 in 1993. Although some statements in that history on their face lend some support State Fund's position, a more in-depth analysis results in the conclusion that section 1812.5095 was intended to cover workers' compensation insurance.

State Fund first points to the stated purpose of Assembly Bill No. 1370 (1993–1994 Reg. Sess.) that was: "[T]o *clarify existing law* and to resolve the dispute between domestic employment agencies and the Employment Development Department regarding the proper interpretation and application of relevant provisions of the Unemployment Insurance Code, the Employment Agency, Employment Counseling, and Job Listing Services Act *with respect to the characterization of domestic employment agencies as agents and not employers of the domestic workers they refer.*" (Stats. 1993, ch. 1275, § 5, p. 7510, italics added.)

State Fund asserts that because this statement does not mention workers' compensation insurance, it was not intended to apply to such matters. State Fund also asserts that because there was no preexisting conflict or ambiguity in the law over whether domestic referral agencies were employers for workers' compensation purposes, it cannot be interpreted as applying to such matters. These contentions are unavailing.

The Assembly Committee on Finance, Insurance and Public Indebtedness commented that Assembly Bill No. 1370 was intended to be "declaratory of existing law decided in *Avchen v. Kid[d]oo* (1988) 200 Cal.App.3d 532 [246

Sess.) *did* pass both houses of the Legislature, and therefore the Legislature's intent in passing the legislation can be gleaned from its legislative history.

Cal.Rptr. 152]." (Assem. Com. on Finance, Insurance and Public Indebtedness, Analysis of Assem. Bill No. 1370 (1993–1994 Reg. Sess.) as amended Apr. 12, 1993, p. 1, italics added.)

The Court of Appeal in *Avchen v. Kiddoo, supra*, 200 Cal.App.3d at pages 536–537 (*Avchen*), held that a nurses' registry was not an employer of nurses for purposes of unemployment insurance because of the lack of control over the nurses by the registry and because the predecessor to the Employment Agency Act and other statutes explicitly defined the nature of the relationship between nurses and their registries as one of agency, not employment. As stated by the Senate Rules Committee, proponents of Assembly Bill No. 1370 (1993–1994 Reg. Sess.) stated "that many referral agencies operate in a manner consistent with the principles of the [*Avchen*] decision and want to codify these principles in statute as they apply to domestic referral agencies." (Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Assem. Bill No. 1370 (1993–1994 Reg. Sess.) as amended Sept. 7, 1993, p. 5.)

State Fund argues that as *Avchen* involved unemployment insurance, not workers' compensation, Assembly Bill No. 1370 (1993–1994 Reg. Sess.) could only be read as clarifying the law in that limited area. However, in the case *Riley v. Southwest Marine, Inc.* (1988) 203 Cal.App.3d 1242 [250 Cal.Rptr. 718] (*Riley*), the Court of Appeal applied *Avchen* to a workers' compensation case. In *Riley*, the plaintiff was retained by Manpower, Inc., a "labor broker," which sent Riley to work at Southwest Marine as a general laborer. Southwest Marine provided all the training, equipment and supervision. Manpower "dealt only with payroll matters, issuing Riley a check on submission of time cards and taking care of withholding social security, federal and state taxes, and paying premiums for unemployment insurance, workers' compensation and [other] insurance." (*Id.* at p. 1246, fn. omitted.)

Riley was injured on the job. He filed a workers' compensation claim and later brought a tort suit against Southwest Marine, contending "he was not a Southwest Marine employee and therefore was not limited to a remedy in the nature of workers' compensation." (*Riley, supra*, 203 Cal.App.3d at p. 1247.) The trial court granted summary judgment in favor of Southwest Marine, and the Court of Appeal affirmed, holding that a dual employment relationship existed as a matter of law because the undisputed evidence demonstrated that Riley was under Southwest Marine's direct supervision and control at the time of his injury. (*Id.* at p. 1252.)

In rejecting Riley's claim that a tort remedy against Southwest Marine should be allowed as an exception to the exclusive jurisdiction of the workers' compensation system, the court stated, "Nor does there appear to exist any legislative support for Riley's proposed exception. The borrowed

servant doctrine is neither new nor only recently applied to the labor brokerage situation. The fact the legislative branch has not sought to amend the workers' compensation statutes to permit a tort remedy for labor broker employees is a strong indication of approval for the judicial interpretation limiting such employees to the statutory remedy in such circumstances." (*Riley, supra*, 203 Cal.App.3d at p. 1259, fn. omitted.) The Court of Appeal contrasted the situation to that presented in *Avchen*, where the California Legislature *had* enacted legislation for nursing labor brokers that stated they were not the employers of nurses: "In California, the Legislature, in the case of labor brokers in the nursing field, i.e., nurses' registries, has specifically provided that the registries are a nurse's 'agent' rather than 'employer.' (See Bus. & Prof. Code, §§ 2732.05, 9958 et seq.;[5] *Avchen*[, *supra*,] 200 Cal.App.3d 532 [246 Cal.Rptr. 152].)" (*Riley, supra*, 203 Cal.App.3d at p. 1259, fn. 11.)

Thus, the existing law that Assembly Bill No. 1370 (1993–1994 Reg. Sess.) sought to clarify and apply to domestic referral agencies, had, at the time Assembly Bill No. 1370 was being considered, been interpreted as holding that nurses' registries were not only not employers for unemployment insurance, but also for purposes of workers' compensation. The Legislature is presumed to be aware of existing law at the time it considers enacting a statute.

Further, the fact that the stated purpose in enacting Assembly Bill No. 1370 (1993–1994 Reg. Sess.) failed to specifically mention workers' compensation is of no moment. Regardless of the original intent in enacting section 1812.5095, the language of the statute does not, expressly or impliedly, limit its reach to unemployment insurance. The Legislature could have easily stated in section 1812.5095, subdivision (a) that domestic referral agencies were "employers for unemployment insurance purposes only." "[A] court is not authorized in the construction of a statute, to create exceptions not specifically made. If the statute announces a general rule and makes no exception thereto, the courts can make none." (*Stockton Theatres, Inc. v. Palermo* (1956) 47 Cal.2d 469, 476 [304 P.2d 7].)

The express language of the statute reveals that if domestic referral agencies comply with its terms, they are not the employers of the domestic workers, and, as a result, are not responsible for workers' compensation

---

[5] Former Business and Professions Code section 9958 was repealed in 1989 (Stats. 1989, ch. 704, § 1, p. 2304) and replaced by Civil Code section 1812.524 (Stats. 1989, ch. 704, § 2, p. 2304).

insurance. Legislative intent may not be used to bootstrap a meaning that cannot be found in the statutory language. (See *City of Sacramento v. Public Employees' Retirement System* (1994) 22 Cal.App.4th 786, 793–794 [27 Cal.Rptr.2d 545].) "The will of the Legislature must be determined from the statutes; intentions cannot be ascribed to it at odds with the intentions articulated in the statutes." (*People v. Knowles* (1950) 35 Cal.2d 175, 182 [217 P.2d 1].)

State Fund points to a Senate amendment to section 1812.5095 while Assembly Bill No. 1370 (1993–1994 Reg. Sess.) was being considered for enactment that, at first blush, provides the strongest support for its position that it does not apply to workers' compensation. As of August 17, 1993, the text of section 1812.5095, subdivision (a) provided in part: "An employment agency . . . is not the employer of a domestic worker for whom it procures, offers, refers, provides, or attempts to provide work, if all of the following factors characterize the nature of the relationship between the employment agency and the domestic worker for whom the agency procures, offers, refers, provides, or attempts to provide domestic work . . . ." (Sen. Amend. to Assem. Bill No. 1370 (1993–1994 Reg. Sess.) Aug. 17, 1993.) However, the Senate then amended this subdivision on August 26, 1993, to state: "An employment agency . . . is not the employer *for any purpose* of a domestic worker for whom it procures, offers, refers, provides, or attempts to provide work, if all of the following factors characterize the nature of the relationship between the employment agency and the domestic worker for whom the agency procures, offers, refers, provides, or attempts to provide domestic work . . . ." (Sen. Amend. to Assem. Bill No. 1370 (1993–1994 Reg. Sess.) Aug. 26, 1993, italics added.) On September 1, 1993, the italicized language was removed: "An employment agency . . . is not the employer of a domestic worker for whom it procures, offers, refers, provides, or attempts to provide work, if all of the following factors characterize the nature of the relationship between the employment agency and the domestic worker for whom the agency procures, offers, refers, provides, or attempts to provide domestic work . . . ." (Sen. Amend. to Assem. Bill No. 1370 (1993–1994 Reg. Sess.) Sept. 1, 1993.) The Senate Rules Committee, on September 7, 1993, described the September 1 amendment as "[d]elet[ing] *provisions* that would have exempted an employment agency, under certain conditions, from the definition of 'employer' for *workers' compensation* and other purposes. Exemptions still remain for employment tax purposes." (Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Assem. Bill No. 1370 (1993–1994 Reg. Sess.) as amended Sept. 7, 1993, p. 3759, italics added.)

However, the September 1, 1993 Senate amendment only deleted the singular phrase added on August 26, 1993. It did not delete the other references to workers' compensation, which specifically state that referral agencies complying with section 1812.5095 must inform domestic workers

and their clients that the agencies are *not* responsible for workers' compensation insurance. "When a statute is unambiguous . . . its language cannot 'be expanded or contracted by the statements of individual legislators or committees during the course of the [legislative] process.' [Citation.]" (*Kanter v. Warner-Lambert Co.* (2002) 99 Cal.App.4th 780, 791 [122 Cal.Rptr.2d 72].)

When the Senate version of Assembly Bill No. 1370 (1993–1994 Reg. Sess.) went to the Assembly for concurrence in the Senate amendments, all Senate amendments were detailed. (Assem. Off. of Research, Concurrence in Sen. Amends. to Assem. Bill No. 1370 (1993–1994 Reg. Sess.) Sept. 7, 1993, p. 1.) The amendment that the Senate described as omitting provisions that would extend section 1812.5095 to workers' compensation was, however, *not* mentioned. (Assem. Off. of Research, Concurrence in Sen. Amends. to Assem. Bill No. 1370, *supra*, Sept. 7, 1993, p. 1.) Even more important, the Assembly concurrence in the Senate amendments states that Assembly Bill No. 1370 "[r]equired the employment agency referring or placing a domestic worker in a job to inform that worker, in writing, of *the worker's obligation* to obtain any necessary business permits or licenses, and to pay unemployment insurance, state disability insurance, *workers' compensation insurance*, and other state and federal taxes." (Assem. Off. of Research, Concurrence in Sen. Amends. to Assem. Bill No. 1370, *supra*, Sept. 7, 1993, p. 1, italics added.)

The obvious upshot of this is that the Assembly, from which the legislation originated, did not agree with the Senate's unilateral statement of the import of its September 1, 1993 amendment. In sum, the legislative history of section 1812.5095 does not support State Fund's contention that it was intended only to apply to unemployment insurance.

E.  *Section 1812.5095 Does Not Contain a "Scrivener's" Error*

State Fund's last argument is that AIHSS's interpretation of section 1812.5095 results from a "scrivener's" error. This contention is unavailing.

"The separation of powers doctrine prevents us from rewriting statutes that do not conflict with the Constitution, other than to correct an obvious and minor drafting error where necessary to effectuate the intent of the Legislature." (*Gray Cary Ware & Freidenrich v. Vigilant Insurance Co.* (2004) 114 Cal.App.4th 1185, 1193–1194 [8 Cal.Rptr.3d 475].) Here, there is no error, either obvious or minor.

In support of its contention that section 1812.5095 contains a scrivener's error, State Fund submits a statement of the Senate Rules Committee as to what notice the domestic referral agency was required to give to domestic workers: "This bill also specifies that: [¶] . . . [¶] 2. An employment agency shall inform the domestic worker in writing that he or she may be obligated to obtain business permits or licenses; is not eligible for unemployment insurance, state disability or workers' compensation benefits *if* the employment agency is not the employer . . . ." (Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Assem. Bill No. 1370 (1993–1994 Reg. Sess.) as amended September 7, 1993, pp. 3–4, italics added.)

State Fund asserts that the "if" was inadvertently left out of the final version of section 1812.5095, subdivision (d), which, as specified above, states: "An employment agency referring a domestic worker to a job shall inform that domestic worker, in writing, on or before the signing of the contract pursuant to paragraph (1) of subdivision (b), that the domestic worker may be obligated to obtain business permits or licenses, where required by any state or local law, ordinance, or regulation, and *that he or she is not eligible for* unemployment insurance, state disability insurance, social security, or *workers' compensation benefits through an employment agency complying with subdivision (b)*." (Italics added.)

State Fund does not explicitly state how this purported error helps its position. It appears, however, that State Fund is arguing that domestic referral agencies are not employers for workers' compensation purposes only *if* they are not deemed employers under the common law test applied by courts in workers' compensation cases.

However, the statement by the Senate Rules Committee, paraphrasing subdivision (d) of section 1812.5095, is not inconsistent with that section. The word "if" only refers to the fact that a domestic referral agency is only considered not to be an employer *if* it meets certain criteria specified in the statute. Moreover, the "if" in the statement by the Senate Rules Committee modifies not only the notice as to workers' compensation, but also as to unemployment insurance and state disability insurance. Thus, to accept State Fund's argument, section 1812.5095 would also not shield domestic referral agencies from unemployment and disability insurance obligations if they did not meet the common law test defining employees versus independent contractors, and section 1812.5095 would be rendered meaningless.

## DISPOSITION

Let a peremptory writ of mandate issue directing respondent Superior Court of San Diego County to vacate its order of January 20, 2006, granting real party in interest State Compensation Insurance Fund's motion to strike references in its complaint to Civil Code section 1812.5095, Civil Code section 1812.501, subdivision (h), and Unemployment Insurance Code section 687.2. Our order of May 26, 2006, staying the trial court proceedings is vacated. Costs on the writ proceeding are awarded to petitioner.

Huffman, Acting P. J., and McIntyre, J., concurred.